Township of Lawrence, Appellant, v. Clair Thompson, Andrew Duga, William Lanager, Sherman Conaway, Melvin Knepp, Sherman Coudriet, and Mrs. Raymond Taylor, Appellees.

Clearfield County Housing Authority, Appellant, v. Clair Thompson, Andrew Duga, William Lanager, Sherman Conaway, Melvin Knepp, Sherman Coudriet, and Mrs. Raymond Taylor, Appellees.

Clearfield Area Housing Corporation, Appellant, v. Clair Thompson, Andrew Duga, William Lanager, Sherman Conaway, Melvin Knepp, Sherman Coudriet, and Mrs. Raymond Taylor, Appellees.

Argued January 8, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Benjamin Novak*, for appellant, Township of Lawrence.

*W. McC. Miller, Jr.*, with him *J. A. Katarincic, J. E. Beard, III* and *Kirkpatrick, Lockhart, Johnson & Hutchison*, for appellants, Clearfield County Housing Authority and Clearfield Area Housing Corporation.

*Kenneth B. Kaufman*, Assistant Attorney General, for intervening appellant, Department of Community Affairs.

*Carl A. Belin, Jr.*, with him *Belin, Belin & Naddeo*, for appellees.

Opinion of Judge Rogers, April 16, 1974:

This is an appeal by Lawrence Township which is located in Clearfield County, the Clearfield County Housing Authority and the Clearfield Area Housing Corporation from an order of the Court of Common

Pleas of Clearfield County overturning the approval by the Supervisors of Lawrence Township of a subdivision application for the construction of a low-cost housing project. The appellees are owners of properties located near the project. The case is a companion to *Clearfield Area Housing Corporation and Clearfield County Housing Authority v. Hughes,* 13 Pa. Commonwealth Ct. 96, 318 A. 2d 754 (1974), filed simultaneously herewith, an action in equity in which other neighbors sought and obtained an order of the Clearfield County Court enjoining continued construction of the project.

A number of procedural and jurisdictional questions are raised here which are disposed of in our opinion in *Hughes, supra.*

Lawrence Township had subdivision regulations adopted in 1958 pursuant to Article XII-A Second Class Township Code, Act of May 1, 1933, P. L. 103, since repealed and replaced by Article V of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, 53 P.S. §10101 et seq. Existing subdivision regulations were saved by the Planning Code, 53 P.S. §10103. The appellant, Clearfield Area Housing Corporation, a nonprofit corporation formed for the purpose of constructing the project and thereafter leasing it to the Clearfield Area Housing Authority for sublease by low income residents, the operation being subsidized by the Federal Department of Housing and Urban Development, applied to the Lawrence Township Supervisors for approval to subdivide 15 acres of land by the construction of 81 low-rent housing units. The supervisors approved the application. The instant appellees appealed the supervsors' action to the Clearfield County Common Pleas Court[1]

---

[1] Section 1007 of the Pennsylvania Municipalities Planning Code, 53 P.S. §11007 provides that persons aggrieved by a develop-

which conducted an evidentiary hearing. The Court sustained the appeal by a memorandum order without detailed findings, that portion of which pertinent here is, in its entirety, as follows: "In this appeal from the action of the Lawrence Township Supervisors in its grant for construction of low-income housing, the Court is satisfied that the proof overwhelmingly establishes that such grant should not have been made and was improperly made under all the circumstances. The proof established the sewage arrangements or systems were and are inadequate and the construction would seriously interfere with the properties already in existence and making use thereof. It might be noted further, that the Court does not depend upon it, that the Department of Environmental Resources previously had ordered that no further connections could be made until the Township took action to improve the system to such an extent that it could service the area as it presently exists."

The only provision of the township subdivision regulations relied on by the appellees, and apparently the court below, is the following: "The Board of Township Supervisors shall not approve any subdivision plan unless all streets shown thereon shall be of sufficient width and proper grade and shall be so located as to accommodate the probable volume of traffic thereon, afford adequate light and air, facilitate fire protection, provide access of fire fighting equipment to buildings, and provide a coordinated system of streets conforming to the Township's official plan of streets; and unless the land whereon buildings are to be constructed

ment permitted on land of another should first submit their objections to the zoning hearing board. Lawrence Township had no zoning ordinance and therefore no zoning hearing board so that in this special circumstance the appeal was properly taken to and entertained by the court below.

shall be of such character that it can be used for building purposes, without danger to health or peril from fire, flood or other hazard."

It was the appellee's contention that the supervisors should not have approved the project because its connection, when completed, to the township sewage system[2] serving the area would create a health hazard. They depended for proof on the testimony of two of their number who lived near the project and who stated that, in times of very wet weather, water contaminated with sewage appears in the cellars of their homes. The appellees also depended upon an order of the Department of Environmental Resources made a few days before subdivision approval was granted, prohibiting additional discharges into the township sewer system without Department approval and directing that the township report what measures it contemplated to reduce infiltration of storm and surface waters into the system, which was the principal cause of difficulties with the system.

The record does not support the lower court's interference with the township supervisors' action approving the developers' application. As noted, the court's action was based upon the alleged inadequacy of the township's sewer collection system. The record clearly establishes, however, that the system's problems were not related to capacity. Indeed, the township's consulting engineer testified that the system has a capacity of 1,700,000 gallons per day, that the proposed low-income housing development will contribute only 47,-600 gallons per day which, added to present use, still leaves an excess capacity of 1,178,000 gallons per day in dry weather. The problems with the system in wet weather, in the engineer's opinion, are the results of

---

[2] The sewage collected by the township sewer system is treated at a plant owned by adjacent Clearfield Borough.

poor maintenance and the illegal use of the system by some persons as a drain for storm and surface waters. There is no defect in the basic design of the system. The township supervisors had, at the time of the hearing below in late May 1973, taken steps to correct the conditions of infiltration at the location of the worst difficulty by laying a surface drain and this work was estimated to require about three months. The occupancy of the townhouses was not scheduled until February of 1974. They could not be used until sewage disposal was provided and this could not be provided until the system was put in a condition satisfactory to the Department of Environmental Resources. Indeed, the Department's order seems to us to strengthen, not impair, the propriety of the supervisors' action.

Furthermore, we have difficulty understanding how the mere approval by the township of the application for subdivision could imperil the health of existing residents based upon deficiencies of the township sewer collection system. That action gave the applicant no right to discharge sewage to the system. We are aware that the township had issued a tapping permit for the project shortly prior to the receipt of the Department of Environmental Resources' order. Even had the supervisors' subdivision approval or its issuance of a tapping permit permitted use of the sewer system, higher authority in the form the Department of Environmental Resources had enjoined discharges pending improvements to the system. We finally note that the Commonwealth has intervened here as well as in the *Hughes* matter and filed a brief in support of the appellants' cause for reversal.

In summary, the supervisors' approval of the Clearfield Area Housing Corporation's application for subdivision approval was proper. It posed no threat to public health based upon the then inadequacies of the township's sewer system, because (1) the system had

96

more than adequate capacity for the project, (2) the system's malfunctioning was not the fault of design but of abuse, (3) it was reparable and (4) the project could not be occupied in any case before the sewer system was capable of use.

Order reversed.