Harrisburg Fore Associates, Appellant, *v.* Board of Supervisors of Lower Paxton Township, Appellee.

Argued June 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Bruce E. Cooper,* with him *Cooper, Friedman & Butler,* for appellant.

*Richard H. Wix,* with him *Wix, Wenger & Weidner,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., August 27, 1975:

This is an appeal by Harrisburg Fore Associates (Appellant) from an order of the Court of Common Pleas of Dauphin County which affirmed the disapproval of a preliminary development or subdivision plan by the Lower Paxton Township Board of Supervisors (Appellee).

On November 15, 1973, Appellant submitted a preliminary development plan to the Lower Paxton Township Planning and Zoning Commission describing a proposed townhouse-apartment complex of 708 units called "Pond Ridge Village" on a 79 acre tract in the township. The tract is irregular in shape, with its present vehicular access limited to a 620 foot broken frontage along Union Deposit Road. The plan provided for a density of 8.96 dwelling units per acre and a projected population of approximately 2,500 residents over a seven year construction period. When the plan was first submitted, the property was zoned R-2 which permitted the multi-family use and density proposed by Appellant, but since then it has been rezoned to effectively prohibit the use.[1] On

---

1. Under Section 508(4) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508(4) (MPC), a landowner is entitled to the benefit of the zoning and subdivision ordinances in effect at the time his preliminary development plan is filed. No zoning change thereafter will affect his plan while that application is pending. In the court below, Appellee argued that the ordinance rezoning the property had been

November 28, 1973, the Planning and Zoning Commission recommended approval of the plan as submitted subject to its modification to indicate the existing cartway and right-of-way of Union Deposit Road, and the names of the owners of the property adjoining the tract. Both conditions were met before the plan was referred to Appellee for a final decision under the mandate of Article 1115.02 of the Township Codified Ordinances.[2] On February 21, 1974, Appellee formally rejected the plan and cited five violations of the township subdivision ordinance, two of which are pertinent to this appeal: 1) the two means of ingress and egress from the tract to Union Deposit Road were found to be inadequate to handle the anticipated traffic generated by the development, a violation of Article 1117 of the ordinance; and 2) the traffic generated would overload Union Deposit Road, again in violation of Article 1117 of the ordinance and Section 105 of the MPC, 53 P.S. §10105.

A timely appeal was taken to the court below pursuant to Section 1006 (1) (a) of the MPC, 53 P.S. §11006 (1) (a). It took additional evidence and entered the following findings of fact in support of its affirmance:

"1. A proposed development of 700 units would produce approximately 5,000 vehicle trips from the development alone.

advertised prior to its decision on the application, and so the amended ordinance was pending and hence controlling. *Monumental Properties, Inc. v. Board of Commissioners of the Township of Whitehall*, 11 Pa. Commonwealth Ct. 105, 311 A. 2d 725 (1973), rejects the application of the pending ordinance doctrine in the context of subdivision or preliminary land development applications under Section 508 (4). Consequently we will consider the application under the prior zoning for the purpose of this appeal.

2. Although the relevant portions of the subdivision ordinance were made a part of the record in the court below, the record certified to this Court finds them absent. We, nevertheless, take judicial notice of Articles 1111-1123 of the ordinance as we must under Act of April 18, 1941, P.L. 16, *as amended*, 28 P.S. §301 (Supp. 1975-1976).

"2. Union Deposit Road in the area of appellants' property had, in 1972, according to the Pennsylvania Department of Transportation traffic counts, 2,900 vehicle trips per day.

"3. Based upon an acceptable 4% annual increase, the gross 1974 traffic count in the area would be in excess of 3,000 vehicles.

"4. The tract of land is surrounded on all sides other than Union Deposit Road by private lands and there are no means of access to any other public roads other than Union Deposit Road.

"5. Union Deposit Road, the area of the subject property, has a road surface varying in width from 20 to 16 feet with berms of 2 to 3 feet.

"6. Several hundred feet east of the property is a one-lane bridge with an approximate width of 14 feet.

"7. The portion of Union Deposit Road abutting appellant's property has poor horizontal and vertical alignment as well as inadequate [sight] distance.

"8. Union Deposit Road in the area of appellants' property has a maximum safe operating capacity of 5,000 vehicles per day.

"9. The two accessways shown on appellants' plan measured from center line to center line are a distance of 365 feet apart whereas the Township Ordinance (§1117.08[d]) require (sic) a minimum of 800 feet.

"10. The proposed eastern accessway would have a [sight] distance of approximately 100 feet which is well below minimum standards of the Department of Transportation.

"11. Two accessways are inadequate to handle the traffic that would be generated from the proposed 700 dwelling units.

"12. The Pennsylvania Department of Transportation has no present plans to improve the existing Union Deposit Road."

The Court, therefore, concluded that the development posed a "serious traffic hazard" and violated Articles 1117.02 and 1117.08 (d), of the subdivision ordinance, and Section 105 of the MPC.

Since the court below heard additional evidence, it must decide the case de novo, and the scope of our review on appeal, accordingly, is to determine whether that court, rather than the governing body, abused its discretion or committed an error of law. *De Feo v. Brookhaven Borough*, 3 Pa. Commonwealth Ct. 377, 283 A. 2d 505 (1971).

When a municipal agency entrusted with power of reviewing applications for subdivision or preliminary development approval rejects an application, Section 508(2) of the MPC, 53 P.S. §10508(2) requires its decision to "specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon." Failing to render a decision in the *manner* specified in this section results in the application being deemed approved as filed. Section 508(3), 53 P.S. §10508(3); *County Builders, Inc. v. Lower Providence Township*, 5 Pa. Commonwealth Ct. 1, 287 A. 2d 849 (1972); *Brauns v. Swarthmore Borough*, 4 Pa. Commonwealth Ct. 627, 288 A. 2d 830 (1972). This mandate applies as well to a Court of Common Pleas when it considers a subdivision plan de novo. In rejecting Appellant's plan, the court below relied on Articles 1117.02 and 1117.08(d) of the township subdivision ordinance, and Section 105 of the MPC. We must conclude that none of these provisions will support the denial of this preliminary development plan.

Article 1117.02, titled "Land Requirements", provides:

"(a) Land shall be suited to the purposes for which it is to be subdivided.

"(b) Land subject to hazards to life, health or property shall not be subdivided for residential purposes until such hazards have been eliminated or un-

less adequate safeguards against such hazards are provided by the subdivision plan."

In *Brauns v. Swarthmore Borough, supra,* we held an almost identical provision of a subdivision ordinance to be an insufficient standard by which to deny a proposed subdivision. Judge KRAMER, speaking for the Court, there aptly concluded: "All the reasons given by the [governing body] in its decision might well be used to defeat a proposed zoning ordinance if such criteria were listed in a comprehensive plan of a municipality. However, there is no statutory authority to permit such nebulous reasons to. defeat a proposed subdivision plan." 4 Pa. Commonwealth Ct. at 635, 288 A. 2d at 834. Similarly, Section 105 of the MPC,[3] (which, incidentally, was advanced to support the decision of the governing body in *Brauns*), is too general and not sufficiently related to the specific provisions of this subdivision ordinance to justify a denial.

Had Appellee or the court below been of the inclination to deny Appellant's preliminary development plan on the grounds asserted, there are ample, specific provisions of the subdivision ordinance to support the conclusion sought. As to the alleged inadequacy of the two access roads proposed by Appellant's plan to accommodate the

---

3. Providing: "It is the intent, purpose and scope of this act to protect and promote safety, health and morals; to accomplish a coordinated development of municipalities, other than cities of the first and second class; to provide for the general welfare by guiding and protecting amenity, convenience, future governmental, economic, practical, and social and cultural facilities, development and growth, as well as the improvement of governmental processes and functions; to guide uses of land and structures, type and location of streets, public grounds and other facilities; and to permit municipalities, other than cities of the first and second class, to minimize such problems as may presently exist or which may be foreseen. It is the further intent of this act that any recommendations made by any planning agency to any governing body shall be advisory only."

anticipated 5,000 vehicle trips per day generated by the 708 apartment units, Article 1117.05 of the ordinance supplies the only revelant standard. Although the submitted plan appears to comply with the requirements of this article, it was not cited by the lower court and therefore cannot now establish the basis for rejection. The only reference to permissible sight distances in the ordinance is found in Articles 1117.06(b), 1117.07(c), and 1117.08(c). Again, it would appear that the instant plan satisfies these requirements, but, in any event, they cannot be relied upon as again not specified in the decision. Additionally, we note that before Appellant can open the access roads proposed, it must obtain a permit from the Pennsylvania Department of Transportation (Penndot) which would necessitate compliance with similar or more stringent standards related to road volume and sight distance. *See Nagorny v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1972). To us, it would appear to be more reasonable and consistent with the mandate of Section 508(2) to condition final subdivision approval upon the issuance of this opening permit rather than to abort the plan at conception.

Finally, the court below found that the distance between the center lines of the proposed access roads violated Article 1117.08(d). This article provides: *"To the fullest extent possible,* intersections with major traffic streets shall be located not less than eight hundred (800) feet apart, measured from center line to center line."* (Emphasis added.) This provision is not mandatory, but would allow special deviations where, as in this case, the total road frontage of the property does not exceed 800 feet. The frontage of Appellant's tract is bisected by a separately owned 160 foot wide lot. To require Appellant to comply literally with Article 1117.08(d), the access drives would have to be located at the opposite ends of the tract along Union Deposit Road. This, in turn, would result in a diminution in the number of usable lots and a displacement of the apartment buildings nearest Union

Deposit Road, and could, in itself, violate Articles 1117.05(c) and (d). In view of these considerations, we must hold that the lower court erred in denying the plan on the basis of Article 1117.08(d).

Ordinarily, a determination that the provisions relied upon by the governing body or lower court will not support the denial of a preliminary development plan would result in the plan being deemed approved as submitted under Section 508(3) of the MPC. Appellant's traffic expert, however, admitted at the final hearing that the present location of the access roads would not satisfy the sight distance requirements of Penndot, and Appellant then offered a second plan which would eliminate this problem. This being so, we think it only appropriate to remand this case to Appellee for the purpose of reviewing the revised plan under the zoning and subdivision ordinances which were in existence at the time of the initial application. We suggest that in light of the prolonged history of this development proposal, this body consider the revision with a view toward approving the preliminary plan subject to the condition that Appellant obtain all required Penndot approvals before it comes in for final development plan approval.

We reverse the order of the court below and remand to the court below for proceedings consistent with this opinion.