Mont-Bux, Inc. *v.* Township of Cheltenham, Appellant.

398

Argued April 7, 1978, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*John P. Gregg,* with him *Samuel H. High, Jr.,* and *High, Swartz, Roberts & Seidel,* for appellants.

*Donald A. Semisch,* with him *Semisch & Der Movsesian,* for appellee.

*S. Gordon Elkins,* with him, of counsel, *Stradley, Ronon, Stevens & Young,* for amicus curiae, Melrose Park Improvement Association.

OPINION BY JUDGE MENCER, July 5, 1978:

The Township of Cheltenham has taken this appeal from an order of the Court of Common Pleas of Montgomery County directing its approval of the development plan of Mont-Bux, Inc., for the erection of a 15-unit apartment building. We affirm.

Mont-Bux owns property in Cheltenham Township which was zoned for multiple dwellings and offices at the time in question. Almost four years ago, in August 1974, Mont-Bux originally filed an application with the Township for the erection of an 18-unit apartment building. Hearings were held before the Township Planning Commission, the Public Works Committee, and the Commissioners, culminating in the Commissioners' vote to reject the plan on March 18, 1975. Some revision of the original plan had occurred during this period, including the reduction to 15 units, due, in part, to the opposition of the Melrose Park Civic Association.

On appeal, two hearings were held before the Court of Common Pleas. After the first, on July 20, 1976, Judge Lowe, remanded the case to the Commissioners for another hearing, particularly with respect to compliance with provisions of the subdivision ordinance dealing with surface water drainage and aesthetics. The Cheltenham Township Subdivision Ordinance of 1974 (Ordinance) provides, *inter alia:*

> Section 223—*Flood Control.* Subdivision proposals and other new developments shall assure that:

A. all such proposals are consistent with the need to minimize flood damage;

B. all public utilities and facilities, such as sewer, gas, electrical and water systems are located, elevated, and constructed to minimize or eliminate flood damage; and

C. adequate drainage is provided so as to reduce exposure to flood hazards.

Section 224—*Design and Type of Structure.* Structures for commercial, multiple dwellings, and institutional use must be designed to be the type of structure which will maintain and preserve the character, aesthetics, and property values existing in the neighborhood in which such structures are to be erected.

At a meeting of the Public Works Committee on November 9, 1976, the minutes of which were introduced into evidence before the lower court, residents in the neighborhood of the proposed development expressed concern over the plan and its impact on property values and contended that it was "an ugly building, incompatible with the neighborhood." The Committee recommended rejection of the plan, and on November 16, 1976, the Commissioners agreed.

The second hearing before the lower court was held on January 12, 1977 before Judge STEFAN. Mont-Bux's engineer, Mr. Rauch, described in detail the plans for handling surface water runoff at the hearing: Two covered seepage pits would be used, an innovative concept which had been used with success elsewhere. Mr. Rauch stated that, even without any dissipation of water into the ground, the pits could effectively accommodate the rainfall of a once-in-every-100-years storm for a period of 45 minutes without overflowing. Although the engineer for the Township, Mr. Sorrenti, felt that some flooding could oc-

cur under this plan, he did not deny that the pits could handle such a storm. The alternative to the seepage pits was apparently connection to an existing storm sewer of the Township or the Pennsylvania Department of Transportation, although the evidence indicated that extensive studies might be required before either of these sewers could be used, and there was no guarantee of the effectiveness of this alternative.

On the question of aesthetics, several witnesses for Mont-Bux testified at the January 1977 hearing that the proposed structure would not adversely affect the aesthetics, character, or property values of the area. No witnesses were presented by the Township at either hearing before the lower court on this issue.

Where additional evidence is taken by the court below, it hears the matter de novo, and our review is limited to a determination of whether the trial judge committed an abuse of discretion or an error of law. *Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township*, 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975). As to the use of the seepage pits, it is clear that the lower court did not abuse its discretion. Section 223 of the Ordinance requires a developer to use a system which will minimize flood hazards, but it does not require the use of a storm sewer as the Township has suggested. The testimony of Mr. Rauch on the effectiveness of the pits sustained Mont-Bux's position that the proposed system would reduce exposure to flood damage.

On the question of Mont-Bux's compliance with Section 224 of the Ordinance, we must be mindful that aesthetics and property values are legitimate considerations in a township's exercise of its zoning power to promote the general welfare. *See Anstine v. Zoning Board of Adjustment*, 411 Pa. 33, 190 A.2d 712 (1963); *County of Fayette v. Holman*, 11 Pa. Com-

monwealth Ct. 357, 315 A.2d 335 (1973). The lower court here had before it pictures of houses in the surrounding neighborhood and the opinions of some residents in the area, found in the minutes of the Public Works Committee, as to the negative impact of the plan on aesthetics and property values. However, the only witnesses who commented on these matters at either of the two hearings before the lower court testified that the development would not adversely affect property values or aesthetics. Our reading of the lower court's opinion indicates that it simply placed more weight on the testimony of these witnesses than on other evidence in the record, an emphasis which certainly does not constitute an abuse of discretion.

Finally, the Township has suggested that the trial judge should have considered his own familiarity with the property and surrounding area as evidence on the question of aesthetics and property values. While he may use this knowledge in interpreting the evidence, it would have been improper for him to take judicial notice of the alleged nonconformity of the proposed structure with the character and aesthetics of the surrounding neighborhood. *Cf. South v. Gray,* 223 Pa. Superior Ct. 442, 302 A.2d 459 (1973) (trial judge's reliance on his own observations of the site of an accident in granting compulsory nonsuit was improper). *See generally* S. Feldman, *Pennsylvania Trial Guide* §7.83 (1973).

Order affirmed.

### Order

Now, this 5th day of July, 1978, the order of the Court of Common Pleas of Montgomery County, entered of record on August 11, 1976, in the above captioned case, is hereby affirmed.