Murray H. Goodman et al., Appellants *v.* The Board of Commissioners of the Township of South Whitehall, Appellee.

Argued October 4, 1979, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Bernard Chanin*, of counsel, *Wolf, Block, Schorr and Solis-Cohen*, with him *Brian P. Flaherty, William E. Schantz*, of *Snyder, Doll & Schantz, Charles Steven Miller*, for appellants.

*J. Jackson Eaton III*, with him *Richard W. Shaffer*, of *Butz, Hudders & Tallman*, for appellee.

*Paul A. McGinley*, with him *William C. Wickkiser*, for intervenor.

OPINION BY JUDGE CRAIG, January 24, 1980:

Developers here appeal from a decision of the Court of Common Pleas of Lehigh County which affirmed denial of preliminary plan approval for a proposed shopping center subdivision under the Subdivision Ordinance[1] (regulations) of South Whitehall Township (township), as governed by Article V of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, §§501-515, 53 P.S. §§10501-10515.

The proposal involves a 16.6 acre tract in the township, adjacent to the city of Allentown, zoned GC-General Commercial, bounded on the north by Tilghman Street, on the east by single-family residences located between it and North Street, on the south by Liberty Street (a street which is partly within an R-3 Residential District) and on the west by Cedar Crest Boulevard and a municipal park. The plan proposes,

---

[1] Although no subdivision of the land into lots is involved, the subdivision regulations are made applicable to the shopping center as a "land development," as authorized by Article V of the MPC.

in addition to parking, four buildings: the largest is to be a one-story supermarket with adjacent row of shops, to be located diagonally across the southeast corner; a bank building is proposed for the northeast corner; a two-story retail store is proposed for the northwest corner; and a two-story professional office building is to be located in the southwest corner. The proposed location of driveways and other planned features and equipment will be discussed below as pertinent. At the time of application, the property was being used as the site of a motel and restaurant.

There is no dispute that all of the proposed uses and parking comply with the use requirements and other specifications of the GC Commercial District.

The highest elevation of the tract is along its northerly edge; from that portion, the topography slopes generally downward to a point approximately 50 feet lower at the extreme southeast corner.

The township regulations describe such a land development as a "major subdivision" and prescribe an informal sketch plan step, in addition to the familiar two-step process of preliminary plan approval and final plan approval.

In pursuing the preliminary plan approval application, developers, as required, proceeded first before the township planning commission, which, after conducting public hearings on five dates, recommended in writing to the township board of commissioners that the preliminary plan be approved subject to approximately 25 specified conditions.

The township board of commissioners (board), without receiving any new evidence, proceeded in two public meetings on the record developed before the planning commission to adopt a resolution denying the preliminary approval on the basis of 16 findings. As noted below, many of the reasons for denial involved

substantially the same subjects as those embodied in the conditions attached to the planning commission recommendation.

Upon the developers' appeal from the board's denial to the Court of Common Pleas of Lehigh County, that court, without taking additional evidence, dismissed the appeal and affirmed the decision of the board.

Recognizing, as did the lower court, that judicial review, where no additional evidence has been received in court, is limited to whether the local board abused its discretion or committed an error of law, *Horst v. Derry Township Board of Supervisors*, 21 Pa. Commonwealth Ct. 556, 347 A.2d 507 (1975), the developers claim that the findings adopted by the board as a basis for denial of preliminary plan approval are either legally invalid or inadequate as a matter of law to justify that action.

The lower court concluded that the denial could stand if validly supported by any one of the several findings adopted. *County Builders, Inc. v. Lower Providence Township*, 5 Pa. Commonwealth Ct. 1, 287 A.2d 849 (1972). Hence the court below affirmed the denial because it concluded that Finding No. 3 was legally sufficient and not an abuse of discretion.

Accordingly, passing over Findings 1 and 2 which are merely descriptive of the location and application, we also examine Finding No. 3, which begins:

3. The component parts of the proposed subdivision have been arranged so as to maximize the detrimental affects. [sic] of such a subdivision upon the surrounding neighborhood in general and the abutting residential properties in particular and is not in conformity with the Subdivision and Land Development Ordinance of South Whitehall Township, Sections 131.11, 713.03, and 721.

Lettered subparagraphs of the same finding expand upon it by referring to: (a) proximity of the primary (supermarket and shops) building to residential properties, (b) noise from the rear of that building, (c) glare from the rear of that building, (d) odor from that building, (e) the greatest commercial building "mass" being located adjacent to the residential area, (f) a two-story structure being located at the top of the steepest embankment and thus at a high level above adjacent residential property, and (g) a service driveway from the primary building to Liberty Street.

The first specific question is the familiar one of whether the board's decision complies with MPC Section 508(2), 53 P.S. §10508(2), requiring that a subdivision decision refusing approval "shall specify the defects . . . and describe the requirements that have not been met" and shall "cite to the provisions of the statute or ordinance relied upon." Under that provision, *V. C. Finisdore, Inc. v. Lower Merion Township,* 27 Pa. Commonwealth Ct. 598, 367 A.2d 412 (1976), affirms that a denial is legally insufficient if not supported by citation to a specific provision of law sufficient to justify a denial.

The first citation given by the board to support Finding No. 3 is Section 131.11, but that section is merely a statement of purpose declaring that the subdivision regulations are to promote health, safety, morals and welfare by "Providing provisions for insuring" conformity to the comprehensive plan, coordinated street design, "adequate" easements, and like generalities. The passage simply does not contain "requirements which have not been met."

Another citation to support Finding No. 3 is Section 721, which contains the specific physical design specifications for construction sites but says nothing about the relationship of commercial to residential uses or any of the other elements in Finding No. 3.

The supporting citation for Finding No. 3 found legally sufficient by the court below was Section 713.03, a brief passage which reads:

713.03   NEARBY DEVELOPMENTS.

A subdivision must be coordinated with existing nearby developments or neighborhoods so that the area as a whole may be developed harmoniously.

This provision is also essentially a very general statement of purpose because, although it points to an admirable and legitimate goal, it provides no requirement or criterion by which the courts could review a finding of noncompliance with it. The idea of coordinating a subdivision so that the area is "developed harmoniously" is as nebulous as the supporting provisions found insufficient in *Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton,* 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975) and *Brauns v. Swarthmore Borough,* 4 Pa. Commonwealth Ct. 627, 288 A.2d 830 (1972).

*Mont-Bux, Inc. v. Township of Cheltenham,* 36 Pa. Commonwealth Ct. 397, 388 A.2d 1106 (1978), considered by the lower court to be sufficient authority upon which to sustain the generality of Section 713.03, does not constitute a holding which sustains the validity of the Cheltenham provision that structures must be "designed to be the type of structure which will maintain and preserve the character, aesthetics, and property values existing in the neighborhood." The sufficiency of that provision was not decided; we simply affirmed the factual conclusion of the lower court that there was no substantial evidence of negative impact upon aesthetics and property values.

As to Section 713.03 here, if a subdivision application could be incontestably rejected upon the vague basis that it has not been "coordinated" as a harmoni-

ous development, then there would be no point to the judicial doctrine that a subdivision plan which complies with applicable regulations must be approved. *See Gulf Oil Corp. v. Warminster Township Board of Supervisors*, 22 Pa. Commonwealth Ct. 63, 348 A.2d 485 (1975).

As to the factual sufficiency of Finding No. 3, a fair reading of it in its entirety amounts to a complaint that this plan to develop permitted commercial uses in a general commercial district proposes to put some major portion of them in a part of the commercial district which is near—but not within—the residential district; such is the thrust of subparagraphs a through d of Finding No. 3, while e and f complain about the size and height of the proposed buildings, even though such aspects are also in compliance with the zoning requirements.

In short, because the township has legislatively decided that neither health, safety or welfare nor harmonious development were violated by classifying the location in question as general commercial under the zoning ordinance, we cannot uphold subdivision rulings which would effectively amend that zoning; that would be equivalent to letting the township "hold in reserve unpublished requirements capable of general application for occasional use." *County Builders, Inc., supra.* When land has been zoned commercial, we cannot allow the prohibition of commercial structures (authorized by the zoning ordinance) in part of the district by treating the property as a "land development" subject to overly-general subdivision regulations.

There is no reason why municipalities cannot, if desired, adopt reviewable provisions to regulate for the legitimate purpose of governing commercial-residential relationships at and near district boundaries. MPC §605(1), 53 P.S. §10605(1), specifically autho-

rizes "transitional provisions at and near the boundaries of districts," and we note in the record that the township zoning ordinance here does have a Section 504, "Provisions for Buffer Strips, Screening and Landscaping."

Lastly, subparagraph g of Finding No. 3 condemns a driveway to Liberty Street, characterized as a residential street, with the finding that the "primary use of this driveway will be for commercial vehicles," *i.e.*, commercial delivery traffic. Because Liberty Street is one of the streets bordering the commercial district and because the driveway itself is wholly within the *commercial* district, there is no violation either of the township's subdivison regulations or of the principle of *Atria, Inc. v. Mt. Lebanon Township Board of Adjustment*, 438 Pa. 317, 264 A.2d 609 (1970), which prohibits a commercial driveway in a *residential* district.

Turning to the remaining findings, Section 711 of the subdivision regulations is cited as support for the claimed violation in Finding No. 4—substantial changes in the natural features of the property, creating by fill extreme embankments which are unnatural—and Finding No. 5, relating to the "substantial use of deep, unconsolidated fill. . . ."

Section 711, entitled "Requirements to Preserve Natural and Historic Features and to Eliminate Hazard Conditions" has, as the heading indicates, two aspects. First, it provides that the planning commission "shall require" that subdivision development "shall preserve insofar as possible all natural and historic features" such as "large trees or groves, water courses and falls, historic areas and structures, exceptional scenic views and other community assets." This section obviously does not constitute either a prohibition or a valid regulation of grading or filling. The second aspect of Section 711 provides in substantial part:

> Land subject to hazardous conditions such as open quarries, unconsolidated fill, floods, precipices and water supply . . . shall not be subdivided until the hazards have been eliminated.
>
> . . .

This is substantially the same provision which we held inadequate to support a refusal in *Harrisburg Fore Associates, supra,* 21 Pa. Commonwealth Ct. at 141-42, 344 A.2d at 281.

Lacking adequate regulatory support, Findings No. 4 and 5 cannot be sustained as a basis for refusal.

Findings No. 10 and 11, relating to the proposed storm water retention basin location, are also supported only by reference to Section 711 and are therefore not validly supported.

Findings No. 6, 7, 8 and 9, relating respectively to water supply, sanitary sewage and storm water, recite that the adjacent city of Allentown "has stated" that it will not provide or accept (as the case may be) such flows. Although these findings are based upon valid and straightforward provisions of the regulations which ultimately require that subdivisions shall be provided with water supply and sanitary and storm sewage service, such speculation as to possible future matters, appropriate for consideration at the point of construction, have been held to be improper for preliminary subdivision plan approval. In *Township of Lawrence v. Thompson,* 13 Pa. Commonwealth Ct. 90, 318 A.2d 759 (1974) we stated:

> Furthermore, we have difficulty understanding how the mere approval by the township of the application for subdivision could imperil the health of existing residents based upon deficiencies of the Township sewer collection system. That action gave the applicant no right to discharge sewage to the system.

13 Pa. Commonwealth Ct. at 95, 318 A.2d at 761.

Moreover, practical provisions relating to the storm water retention pond were set forth by the planning commission as conditions for approval; because we do not understand that the developer has any objection to those conditions—relating to fencing the pond, providing detailed construction specifications, minimizing its depth and providing it with an impervious lining—there is no reason why they cannot remain effective as conditions to approval.

Finding No. 12 is a condemnation of "traffic hazards" in general terms. Such generalized condemnations of anticipated traffic are not sufficient reasons for denial, as we have held in *Harrisburg Fore Associates, supra,* and in *Valley Run, Inc. v. Swatara Township Board of Commissioners,* 21 Pa. Commonwealth Ct. 649, 347 A.2d 517 (1975).

Subparagraphs a through c, under the general traffic finding in No. 12, are specific driveway and sidewalk matters which would be entirely eliminated or corrected by compliance with the conditions attached by the planning commission, as would be Finding No. 13 requiring the plans to be amended to show clearsite triangles, Finding No. 14 calling for 21-inch deep curbing, and Finding No. 15 relating to the relocation of one fire hydrant.

Finding No. 16, alleging "detrimental effects," is supported by no reference to any subdivision requirement and is therefore insufficient.

As in *Valley Run Inc., supra,* there appears to be no reason why, with the outright denial being unfounded as a matter of law, this plan should not be approved subject to the 25 specific "conditions" attached to the approval by the planning commission recommendation.[2]

---

[2] Condition No. 1 concerning water supply authorization from the City of Allentown must be recognized, as noted above, as a condition precedent to construction, not to final approval. Conditions

We will reverse and remand with a direction to that effect.

ORDER

AND Now, this 24th day of January, 1980, the order of the Court of Common Pleas of Lehigh County, dated February 8, 1979, is reversed and these proceedings are remanded with instructions that preliminary plan approval be granted, with the attached conditions 1-25, inclusive, as set forth in the action of the Planning Commission of South Whitehall Township dated November 10, 1977.

This decision was reached prior to the expiration of the term of office of Judge DISALLE.

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

The evidence submitted to the township board of commissioners clearly supports its finding number 3, which reads in full:

3. The component parts of the proposed subdivision have been arranged so as to maximize the detrimental affects [sic] of such a subdivision upon the surrounding neighborhood in general and the abutting residential properties in particular and is not in conformity with the Subdivision and Land Development Ordinance

---

10, 12 and 13, mentioning possible requirements of the Pennsylvania Department of Highways, are to be interpreted as written, in order not to run afoul of *Bethel Park Minimall, Inc. v. Borough of Bethel Park*, 16 Pa. Commonwealth Ct. 97, 326 A.2d 670 (1974). The "general recommendation," as to restricting hours of commercial operation, by its terms is not one of the conditions. *See Van Sciver v. Zoning Board of Adjustment*, 396 Pa. 646, 152 A.2d 717 (1959), as to the doubtful validity of regulating business hours by the attachment of ad hoc conditions in the land-use regulation process.

of South Whitehall Township, Sections 131.11, 713.03, and 721.

a. The most intensive use of the subject premises is the primary commercial building which is thrust into the area closest to residential properties.

b. The location of the rear of the primary commercial building facing the residential properties will accentuate the problems of noise from loading and unloading, trash pick up, late night and early morning deliveries and the sound of heavy duty trucks and other commercial vehicles by concentrating them at the area closest to the residential properties.

c. The necessity of illuminating the primary commercial building for the pruposes [sic] of safety and protection will accentuate the problems of glare by its location immediately adjacent to the residential areas.

d. Odors released from restaurant exhausts and other uses will be generated in the area of the subject premises closest to the residential area. The concentration of such odors drifting into the residential area will necessarily be increased as a result of said location to the detriment of the residential property.

e. The greatest mass in terms of building size is located immediately adjacent to the residential structures of much different architectural style and mass.

f. The only two-story structure in the subdivision is located at the top of the steepest embankment on the premises (which artificial embankment the developer will create by extensive fill) thereby placing the office building an approximate height of 40 feet above the ground

level of the immediately adjacent residential properties.

g. Developer proposed a driveway which clearly services the loading and delivery area of the main building from Liberty Street which is a local, residential street in the heart of a residential area. The Board of Commissioners finds that the primary use of this driveway will be for commercial vehicles and will concentrate commercial delivery traffic on local residential roads and require commercial vehicles to negotiate a curved driveway with a steep grade which must of necessity increase the engine noise and traffic in the residential area.

This Court has previously observed "that aesthetics and property values are legitimate considerations in a township's exercise of its zoning power to promote general welfare." *Mont-Bux, Inc. v. Township of Cheltenham,* 36 Pa. Commonwealth Ct. 397, 401, 388 A.2d 1106, 1107 (1978). The ordinance in question here encompasses these considerations in Section 713.03 with the requirement that a development be "coordinated with nearby developments or neighborhoods," and the facts as found by the board indicate a blatant and clear disregard of this requirement. Admittedly, the standard expressed in the ordinance could be more specific. But where, as here, there can be no doubt that the developer's plan is drastically out of character with, and is in fact designed so as to maximize the detrimental effects on, the surrounding residential neighborhoods, I would conclude that there is sufficient ground for rejecting the plan. Moreover, I do not agree with the majority that it is unobjectionable for the developers to route the necessarily heavy commercial traffic which will service the shopping center through a residential neighborhood merely because

the shopping center's "driveway itself is wholly within the *commercial* district."

Finally, the majority's decision, if taken to its logical conclusion, would mean that a governing authority could never reject a subdivision plan, no matter how patently detrimental it may be to the health, safety, or welfare of the community, unless a specific statutory provision explicitly prohibits the particular feature which the authority finds objectionable. To require a municipality to anticipate with such specificity every possible problem which could arise from the construction and operation of a subdivision or development is clearly unrealistic and severely limits, if it does not eliminate, the appropriate discretion of the governing authorities.

I would therefore affirm the court of common pleas.