# Godorov. v. The Board of Commissioners of Springfield Township

*Richard J. Goldstein*, for plaintiff.
*Thomas M. Garrity*, for defendant.
*George C. Corson*, for appellees.

STANZIANI, *J.*, January 29, 1981—

## SUMMARY

On March 20, 1979, appellant, Stan Godorov, filed with the Township engineer of Springfield Township, a preliminary plan for development of 22.677 acres situated along the southeast side of Paper Mill Road and the northeast side of Stenton Avenue in Springfield Township. The plan proposed to subdivide a parcel which is characterized by steep slopes, fairly dense vegetation and flood plains into 30 lots. The subject plan was reviewed by township officials from March 20, 1979 through February 13, 1980. During that time the plan was reviewed by the Montgomery County Planning Commission, the Springfield Township Planning Commission, the Wissahickon Valley Watershed Association in addition to the Township Engineers.

Public hearings were also held concerning the proposed plan. Finally, by letter dated February 14, 1980, the Board of Commissioners of Springfield Township advised appellant that his plan was being rejected for numerous reasons. Appellant then filed this appeal which is now before the court for resolution.

## ISSUE

Whether the Board of Commissioners of Springfield Township properly rejected appellant's preliminary plan for subdivision approval?

## DISCUSSION

Initially it must be noted that since this Court took no additional evidence, our scope of review will be limited to whether the Board of Commissioners abused their discretion or committed an error of law in rendering their decision. Goodman v. Board of Commissioners of the Township of South Whitehall, 49 Pa. Commw. 35, 411 A.2d 838 (1980); Horst v. Derry Township Board of Supervisors, 21 Pa. Commw. 556, 347 A.2d 507 (1975).

Section 508(2) of the Pennsylvania Municipalities Planning Code (hereinafter "MPC"), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10508(2), on approval of plots, requires:

"When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon."

The Board of Commissioners in their letter dated February 14, 1980, notified appellant of the follow-

ing reasons for rejection of his preliminary subdivision plan:

"1. Applicant failed to comply with the provisions of Section 114-45C of the Code of Springfield Township (hereinafter referred to as the "Code"), in that he did not submit a *standard* subdivision plan showing the number of building lots permitted on a net square footage basis *under the existing requirements of the applicable zoning classification.* The plan submitted by the applicant to establish the maximum permissible density is deficient in the following respects:

A. The plan does not show grades, cuts and fills as required by Section 95-6 of the Code.

B. The plan does not show profiles of highways, design, course, structure and capacity of drainage facilities as required by Section 95-7 of the Code.

C. The plan does not demonstrate that the 50 foot right-of-way shown thereon can be safely used as required by Section 95-10 of the Code, nor has provision been made for a 40 foot wide right-of-way along natural water courses as required by Section 95-11 of the Code.

2. The preliminary plan is not in conformity with Section 114-45L of the Code, in that excessive earth moving, tree clearance and destruction of natural amenities will be required in the development of the finished topography of the site. Little or no effort has been made to adjust building locations or orientations to reduce the required regrading of the site. Specifically Lots 4, 9, 10, 13, 14, 20, 21, 22, 24, 25, 26 and 27 require radical cuts or fills ranging from 4 to 14 feet, with many between 8 and 10 feet. Buildings on Lots 4, 5, 6, 7, 8, 9, 11, 12, 22, 24, 25, 26 and 27 have been oriented to the street rather than orienting the long axis of proposed dwellings to exist-

ing grades, i.e. the plan continues to "buck" the natural contours of the site."

In each instance the board has set forth with particularity the defect found to exist and the provision of the Springfield Township Code which is being relied upon. We therefore find the board has sufficiently complied with the requirements of Section 508(2) of the MPC.

Appellant contends that the board's reliance upon Chapter 114 of the Code, which constitutes the township's zoning ordinance, is inappropriate with respect to subdivision approval. We do not agree. The language of Section 504(4)* of the MPC makes

---

*Section 508(4) provides in pertinent part:

From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the *zoning,* subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations. When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the *zoning,* subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval. Where final approval is preceded by preliminary approval, the three-year period shall be counted from the date of the preliminary approval. In the case of any doubt as to

clear the fact that, where applicable, the requirements of the zoning ordinance must be complied with in addition to the requirements of the subdivision ordinance when seeking subdivision approval. This is especially true in the instant case where appellant has sought to take advantage of a zoning option provided by Springfield Township.

Appellant's subdivision plan was submitted under Section 114-45 of Chapter 114 of the Springfield Township Code, a Design Alternative option, which allows for a reduction in the minimum lot area requirement with the provision of common space in order to encourage the preservation of natural site features. To reap the benefits of this zoning option, appellant must, of course, comply with the requirements of the ordinance which created it. As stated previously, appellant has failed to so comply.

A rejection of appellant's subdivision plan was also recommended by the Montgomery County Planning Commission, the Springfield Township Planning Commission, the Wissahickon Valley Watershed Association and, in effect, the Township Engineer. The Montgomery County Planning Commission is quoted as saying:

"It is the opinion of this Commission that the applicant's plan is unacceptable in light of the degree of site disturbance which is proposed and which is in direct violation of the intent of the Design Alternative ordinance and the regulations contained therein."

---

the terms of a preliminary approval, the terms shall be construed in the light of the provisions of the governing ordinances or plans as they stood at the time when the application for such approval was duly filed.

Upon second review the Commission continued to state:

"Although we recognize that several of the revisions to the earlier plan will somewhat reduce the potentially negative impact of the proposal, this Commission maintains its previously stated position that the intensity and character of the development as proposed violates the intent of the Design Alternative ordinance, which is to preserve natural site features and protect environmentally sensitive lands."

Wissahickon Valley Watershed Association unequivocally recommended rejection of the proposed plan when it noted:

"The revisions made to the plan do not appear sufficient to eliminate the difficulties of developing on a site as sloped and rugged as this. Specifically, the problems of dealing with increased storm water runoff and erosion appear to be formidable on this tract. Because of the difficulty of developing the site, and the potential for flood and sedimentation damage in already hard hit flood-prone areas downstream, WVWA feels that the best use of this land is not for development, but rather open space."

Finally, there is the report of the Township Engineer. Although Mr. James did recommend approval of the proposed plan, he did so contingent upon two major conditions being met. In this instance the Board felt compelled to interpret this conditional approval as a rejection. Such an interpretation is supported by statute and case law. See 53 P.S. §10508(4); Pisani Appeal, 107 Montg. Co. L.R. 106 (1980); Board of Township Commissioners of Anneville Township v. Levengood, 44 Pa. Commw. 336, 403 A.2d 1055 (1979).

Based upon the foregoing discussion, we find the board properly rejected appellant's application for preliminary subdivision approval.

## ORDER

And now, this January 29, 1981, upon consideration of the briefs and arguments of counsel, the appeal of Stan Godorov is dismissed and the decision of the Board of Commissioners of Springfield Township is affirmed.