Pace Resources, Inc., Appellant *v.* Shrewsbury Township Planning Commission and Shrewsbury Township Board of Supervisors, Appellees.

Shrewsbury Township Planning Commission and Shrewsbury Township Board of Supervisors, Appellants *v.* Pace Resources, Inc., Appellee.

Pace Resources, Inc., Appellant *v.* Zoning Hearing Board of Shrewsbury Township, Appellee.

Shrewsbury Township Planning Commission and Shrewsbury Township Board of Supervisors, Appellants *v.* Pace Resources, Inc., Appellee.

Argued January 31, 1985, before Judges Craig and Colins and Senior Judge Blatt, sitting as a panel of three.

*Donald L. Reihart, Laucks & Monroe,* for appellant/appellee, Pace Resources, Inc.

*Gilbert G. Malone,* for appellant/appellee, Shrewsbury Township Board of Supervisors.

Opinion by Judge Colins, May 23, 1985:

In this appeal, we must determine whether Section 402 (approval of on-lot water systems) of the Shrewsbury Township (Township) Subdivision and Land Ordinance is void for vagueness and whether an amendment to that ordinance which rezoned a 39-acre tract from "industrial" to "agricultural" constituted discriminatory zoning.

In 1965, Pace Resources, Inc. (Pace)[1] purchased a 145.61 acre tract of land in the Township. Pace developed preliminary plans to subdivide this land and create an industrial park, to be known as Southern Industrial Park. At the time of the purchase and initial development of the subdivision plans, Shrewsbury Township had neither a zoning ordinance nor a comprehensive plan.

Pace divided its land into 47 lots and submitted a preliminary subdivision plan to the Township. The Board of Supervisors approved this plan on April 2, 1973. Pace submitted and later received final plan approval for several of these lots.

In November of 1976, the Township adopted its first Comprehensive Plan and its first Zoning Ordinance. Pursuant to this ordinance, Pace's entire tract was zoned "industrial".

---

[1] Pace was formerly known as Buchart Associates when it first purchased this land.

Pace resubmitted a preliminary subdivision plan for lots 28 through 40 and 44 through 47, in December of 1978. In addition, Pace submitted a "preliminary/final"[2] plan for lots 3 through 5, 7 through 16, and 41 through 43.

On January 9, 1979, the Board of Supervisors met with the Township solicitor and zoning officer to conduct a review of the Township's Zoning Ordinance and Comprehensive Plan. As a result of this meeting, several proposed zoning amendments were prepared by the solicitor and submitted to the York County Planning Commission, including a proposal to rezone 37 acres of Pace's land to "agricultural".

The Board of Supervisors met on February 7, 1979, and, after reviewing Pace's subdivision plan for the above-mentioned lots, presented Pace with a list entitled "Defects in Final Plan Subdivision by Southern Industrial Park." Pace requested and received a continuance to allow it to correct the enumerated defects. On March 7, 1979, at a joint meeting of the Planning Commission and the Board of Supervisors, Pace resubmitted its subdivision plan, which again was rejected. Formal written notice of the rejection and the reasons therefor were mailed to Pace on March 8, 1979. The crux of the Board of Supervisors' decision to deny Pace approval centered on Pace's failure to comply with Section 402 of the Township Subdivision and Land Development Ordinance.

Pace appealed this decision to the Zoning Hearing Board (Board), which on December 22, 1980, dismissed Pace's appeal. Pace then filed several ap-

---

[2] In the belief that Pace had not effected preliminary approval for these lots for which Pace sought final approval, the Board of Supervisors requested Pace to amend its final plans to be titled preliminary plans. Pace complied with this request and these plans are referred to as "preliminary/final plans".

peals to the Court of Common Pleas of York County.[3] On August 31, 1983, the Court of Common Pleas remanded the matter to the Township Board of Supervisors for reconsideration of its decision to grant or deny approval of Pace's preliminary and final plans because the Court found that the Board of Supervisors had committed an error of law by relying on Section 402 to deny Pace's subdivision plans. On September 27, 1983, Pace filed an application for reconsideration of the order of August 31, 1983, with the Court of Common Pleas. On reconsideration, the Court addressed the constitutionality challenges previously raised by Pace. The Court, on March 12, 1984, dismissed each, including the allegation that spot zoning had occurred. Consolidated for disposition before this court are the appeals of Pace and the Township from orders of the Court of Common Pleas of York County dated August 31, 1983, and March 12, 1984.[4]

Our scope of review where, as here, the lower court has taken no additional evidence is limited to a determination of whether or not the Board of Super-

---

[3] In Civil Action No. 79-S-1034, Pace appealed the denial of its subdivision plans by the Township Planning Commission and the Board of Supervisors. In Civil Action No. 81-S-277, Pace appealed from the opinion and order of the Board regarding the validity of the amendments to the Township Zoning Ordinance and Subdivision and Land Development Ordinance.

In addition, the Township in Civil Action No. 81-S-266 cross-appealed the decision of the Board which dismissed Pace's appeal, in order to preserve proposed findings of fact which were not adopted by the Board, but which it felt supported the Board's decision.

[4] On September 23, 1983, Pace filed Notice of Appeal to this court in Civil Action Nos. 79-S-1034, and 81-S-277. The Township on September 30, 1983, filed Notice of Appeal to this court in Civil Action Nos. 79-S-1034 and 81-S-266.

visors has committed an abuse of discretion or an error of law. *Ridgeview Associates v. The Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 459, 333 A.2d 249 (1975).

We will first address the issue whether Section 402 of the Township Subdivision and Land Development Ordinance is void for vagueness.

Section 402 provides in pertinent part that:

The Board of Supervisors will approve individual on-lot water supply systems only when the feasibility study indicates that the Township and the Township engineer certifies that justification of the project necessitates consideration of this method, the water supply yield is adequate for the type of development proposed, the installation of such systems will not endanger or decrease ground water of properties adjacent to the land development.

When the governing body or the planning agency entrusted with the power of reviewing applications for subdivision or preliminary development approval rejects an application, Section 508(2) of the Municipalities Planning Code[5] requires its decision to "specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite the provisions of the statute or ordinance relied upon."

Section 402 provides no requirement or criterion by which the courts could review a finding of noncompliance with it. The idea of providing an "adequate" water supply and the installation of such systems so as not to "endanger or decrease" ground water supplies of adjacent land are insufficient standards by which to deny a proposed subdivision.

---

[5] Act of 1968, July 31, P.L. 805, *as amended,* 53 P.S. §10508(2)

"[T]here is no statutory authority to permit such nebulous reasons to defeat a subdivision plan." *Brauns v. Swarthmore Borough,* 4 Pa. Commonwealth Ct. 627, 635, 288 A.2d 830, 834 (1972); *See also Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton,* 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975); *Goodman v. Board of Commissioners of the Township of South Whitehall,* 49 Pa. Commonwealth Ct. 35, 411 A.2d 838 (1980). Therefore, the Board of Supervisors committed an error of law when it relied on Section 402 of the Township's ordinance to deny approval of Pace's subdivision plans.

We now turn to the issue of whether the rezoning of 37 acres of Pace's land from "industrial" to "agricultural" constituted illegal discriminatory zoning.

One form of discriminatory zoning is spot zoning. In *Mulac Appeal,* 418 Pa. 207, 210, 210 A.2d 275, 277 (1965), our Supreme Court defined spot zoning as "[a] singling out of one lot or small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment." The Court in *Mulac* went on to state that: "[T]he size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an 'island' having no relevant differences from its neighbors." *Id. See also Schubach v. Silver,* 461 Pa. 366, 382, 336 A.2d 328, 336 (1975). Furthermore, our Supreme Court has cautioned us that we should not limit our inquiry to the mere physical aspect and characteristics of the land, but we should also consider how the rezoning affects the public health, safety, morals, and general welfare and how it relates to

the township's comprehensive plan. *Schubach,* 461 Pa. at 382-83 n. 14, 336 A.2d at 336 n. 14.

In the instant case, the size of the rezoned area, 37 acres, is considerably larger than other areas found by our courts to be the object of spot zoning. *See Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964); *French v. Zoning Board of Adjustment,* 408 Pa. 479, 184 A.2d 791 (1962). However, even relatively large tracts of land can in fact be a spot zone. In *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 311, 211 A.2d 514, 519 (1965), our Supreme Court stated that: "It makes no difference whether it is a one-quarter acre lot or a 50 acre industrial complex which is the subject of the rezoning. If it is aimed at preventing a theretofore legal use of an integrated unit owned by one common interest, the action cannot be supported as valid rezoning." Similarly, in *Appeal of Benech,* 28 Pa. Commonwealth Ct. 415, 368 A.2d 828 (1977), we held that a rezoned parcel of 80 acres was a spot zone.

The Township, in this case, has failed to show any substantial relationship between the rezoning of 37 acres of Pace's land and the public health, safety, morals, or welfare. The rezoning of Pace's land to "agricultural" was accomplished by the Board of Supervisors in only an hour from the introduction of the Ordinance to its final passage. This differs sharply from the prior zoning scheme which was the product of months of planning, studies, and meetings. In fact, the record indicates that this change was prompted by a petition from area residents requesting such a change, and that the circulator of the petition was the wife of one of the Planning Commissioners.

The stated intent of the Planning Commission and the Board of Supervisors was to preserve the rural nature and agricultural integrity of the Township.

However, as a result of this rezoning and other zoning changes made,[6] the agricultural land was actually reduced from 69.4 percent to 68.6 percent.

The rezoning of certain industrial land to agricultural, including Pace's tract is also inconsistent with the comprehensive plan. The comprehensive plan indicates that the Township planned to have a spirit of positive industrial development in designated areas. The Southern Industrial Park was situated in one of these areas. As a result of these zoning changes, which included rezoning of 37 acres of Pace's land, industrial land was reduced from 2.1 percent to 1.4 percent.

Finally, the rezoning of the 37-acre tract caused tremendous economic detriment to Pace. Pace cannot subdivide these 37 acres for residential purposes, since a Township ordinance prohibits subdivision of lots in agricultural districts if they are less than 50 acres in size. (We have recently upheld a similar ordinance in *Codorus Township v. Rodgers,* 89 Pa. Commonwealth Ct. 79, A.2d (1985).)

Therefore, we conclude that the rezoning of Pace's 37 acres constituted arbitrary and unjustifiably discriminatory zoning.

Accordingly, for the aforementioned reasons, the orders of the Court of Common Pleas of York County, dated August 31, 1983, and March 12, 1984, are affirmed in part and reversed in part. They are affirmed insofar as they relate to the holding in Civil Action No. 79-S-1034, that Section 402 of the Township Subdivision and Land Development Ordinance is void for vagueness and reversed insofar as they per-

---

[6] 128.1 acres of land previously zoned industrial was rezoned to "agricultural" and other designations. Thirty-seven acres of this land belongs to Pace.

tain to the holding in Civil Action No. 81-S-277, that no discriminatory zoning had occurred.

The matter is remanded to the Court of Common Pleas for further proceedings consistent with the opinion of the trial court in Civil Action No. 79-S-1034.

ORDER

AND Now, this 23rd day of May, 1985, the orders of the Court of Common Pleas of York County, dated August 31, 1983, and March 12, 1984, are affirmed in part and reversed in part. They are affirmed insofar as they relate to the holding in Civil Action No. 79-S-1034, that Section 402 of the Township Subdivision and Land Development Ordinance is void for vagueness and reversed insofar as they pertain to the holding in Civil Action No. 81-S-277, that no discriminatory zoning had occurred.

The matter is remanded to the Court of Common Pleas of York County for further proceedings consistent with the opinion of the trial court in Civil Action No. 79-S-1034.

Jurisdiction relinquished.

Judge WILLIAMS, JR. did not participate in the decision in this case.