Valley Run, Inc. *v.* Board of Commissioners of Swatara Township. Valley Run, Inc., Appellant.

650

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Bruce E. Cooper*, with him *Charles E. Friedman*, and *Cooper, Friedman & Butler*, for appellant.

*James W. Reynolds*, with him *David A. Wion*, and *Reynolds, Bihl and Schaffner*, for appellee.

OPINION BY JUDGE BLATT, November 17, 1975:

This is an appeal taken by Valley Run, Inc. from an order of the Court of Common Pleas of Dauphin County which affirmed the refusal of the Board of Commissioners (Board) of Swatara Township (Township) to grant approval to a subdivision plan for an apartment complex.

The appellant is the owner of an 82.58 acre tract located in a zoning district where, under the Township Zoning Ordinance of 1973, apartment houses were a permitted use.[1] At some time prior to March 25, 1974 a

---

1. On April 1, 1974 the Township's zoning ordinance was amended so that apartments are no longer a permitted use on the appellant's property.

preliminary plan for the construction there of a 504 unit apartment complex was submitted to the Township's Planning Commission, pursuant to the procedure outlined in the Township's Subdivision and Land Development Ordinance. The Planning Commission approved the plan on March 25 but it was subsequently submitted to the Board which disapproved it on May 10, 1974. Four reasons for the Board's decision were communicated to the appellant by letter of May 13. An appeal was then taken to the Court of Common Pleas which remanded to the Board for the purpose of receiving evidence and making findings of fact. On the basis of testimony taken by deposition the Board then issued thirteen findings of fact. An appeal was again taken to the Court of Common Pleas which affirmed.

Two of the reasons originally given by the Board for denying approval have subsequently been withdrawn so that presently there remain only two reasons which purportedly support the Board's action. These two reasons, as stated in the letter of May 13, 1974, are:

"1. Prospective increased traffic to and from project area on to Chambers Hill Road will create an intolerable traffic hazard in an already high frequency accident area. In addition, this hazard is increased by the inadequate visibility at the two exit-entrances. See Penna. Municipalities Planning Code,[2] Article V, Section 503(2) (ii) as implemented by Swatara Township Subdivision and Land Development Ordinance No. 1973-4. Article V, Section 501(1) and (2) and Section 502(9)." (Footnote added.)

and

"3. The Plan does not contain the designation of streets (within the project area) by name and does not show the correct widths thereof as required by

---

2. Act of July 31, 1968, P. L. 805, *as amended*, 53 P. S. §10503(2)(ii).

the aforementioned Ordinance, Article IV, Section
404 (4) and (5) and Section 502(11) and (14)."

The Board's conclusion that a traffic hazard will
eventuate is based upon its findings as to the width of
the Chambers Hill Road adjacent to the proposed develop-
ment, and the number of vehicles which would travel
on that road after the development is in use. The Board
felt that the increase in traffic resulting from use of
the development would create congestion and an in-
creased danger of accidents. The Board has failed, how-
ever, to show that the appellant's plans are in violation
of any of the specific conditions which the ordinance
attaches to the grant of subdivision approval. Section
501(1) and (2) of the ordinance provide:

"The design of all subdivisions and land develop-
ments shall be in conformance with and subject to
the following general standards and provisions:

"1. Suitability of Land: Land subject to hazards
of life, health, or property as may arise from
fire, floods, severe storm water runoff, disease
or other dangers shall not be subdivided for
development or developed for purposes sus-
ceptible to such hazards unless they have been
eliminated or the subdivision or land de-
velopment plat provides adequate safeguards
against such.

"2. Physiography Considerations: The standards
of this Ordinance may be increased, or the
modification of the design or a proposed sub-
division or land development may be required,
on the recommendation of the Township Engi-
neer and/or Planning Consultant, when such
is deemed necessary as a result of topographic
and other natural or man-made physical fea-
tures within or adjoining a particular site to
assure public safety, health and welfare; the

provision of public services; and the maintenance of public facilities."

Subsection (1) is very similar to a provision invoked by a local governing body to deny subdivision approval in *Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township,* 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975). We there held that such a provision is too general and not sufficiently related to the specific provisions of the ordinance to justify a denial. As for Subsection (2) we fail to see its applicability in that the Board has not indicated that the standards set out in its ordinance have been changed nor has it required a modification of the appellant's plans. Moreover, we regard Subsection (2) as also being too general and indefinite a reason to deny approval to one whose use is permitted by the zoning ordinance and who has complied with every specific provision in the zoning and subdivision ordinances. *See Brauns v. Swarthmore Borough,* 4 Pa. Commonwealth Ct. 627, 288 A.2d 830 (1972).

Section 503(2)(ii) of the Pennsylvania Municipalities Planning Code (MPC), also relied upon by the Board, provides that a subdivision and land development ordinance may include "provisions for insuring that streets in and bordering a subdivision or land development shall be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection." That provision unquestionably authorizes a municipality in its ordinance to condition subdivision approval upon compliance with specific requirements as to the location, width and grade of roads within and bordering a development in order to avoid traffic difficulties. But it does not give the municipality the authority to deny an otherwise permitted use simply because of the increase in traffic which ordinarily accompanies that use.

Another source of difficulty for the appellant is that it does not own certain property adjacent to its access road and that therefore the planting of trees and shrubbery by the neighboring landowner could, in the future, dangerously restrict horizontal site distance from the access road to the Chambers Hill Road. The testimony on this subject refers to the standards for obtaining a permit from the Pennsylvania Department of Transportation (PennDOT) but the Board in its decision refers to Section 502(9) of the Subdivision and Land Development Ordinance which states: "Sight distance to permit horizontal visibility on all streets shall be established in accordance with the Engineering Specifications." In the Board's decision, however, there is no reference to the individual specifications which have supposedly been violated nor does the Board indicate in any way what specific standard the appellant's plans breach. Bearing in mind the requirements in Section 508(2) of the MPC, 53 P. S. §10508(2), that the Board "specify the defects found in the application and describe the requirements which have not been met," we must conclude that approval was improperly denied on the basis of undisclosed engineering specifications. PennDOT, of course, has the responsibility for administering the issuance of its own permits, although, as we noted in *Harrisburg Fore, supra,* it may be appropriate for a municipality to condition *final* subdivision approval upon the issuance of a permit from PennDOT.

The second reason for the Board's rejection of the appellant's plan involves its failure to designate the names and widths of the streets within the development. The appellant concedes that its original plan was defective in that respect but a revised plan correcting those defects was subsequently submitted to the Board. The Board apparently disregarded the revisions in maintaining its position that the plans could not be approved. In *Harrisburg Fore, supra* and in *Monumental Properties, Inc.*

*v. Board of Commissioners of the Township of Whitehall,* 11 Pa. Commonwealth Ct. 105, 311 A.2d 725 (1973) we permitted applicants to make relatively minor substantive changes in their plans to conform to the requirements of the municipalities, rather than affirm a rejection of the plans in their entirety. We must follow the same course here. Outright disapproval would be grossly unfair here in that it would mean permanent rejection because of the changes in the zoning ordinance. Moreover, the testimony of the appellant's expert who drew the plans indicates that there has been no substantive change in the layout of the streets and their widths but that the revised plans merely include the missing designations as to widths and names.

We, therefore, reverse the order of the lower court and remand the record with the direction that the preliminary plan of Valley Run, Inc. be approved if its revised plans comply with the Township's requirements as to the designation of streets within the development by name and width.