**COMMUNITY SERVICE LEADERSHIP DEVELOPMENT CHARTER SCHOOL, Petitioner**

v.

**PITTSBURGH SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided Jan. 5, 2012.

Robert W. O'Donnell, Philadelphia, for petitioner.

Robert M. Junker, Pittsburgh, for respondent.

BEFORE: LEAVITT, Judge, and BUTLER, Judge,[1] and FRIEDMAN, Senior Judge.

---

1. This case was decided before Judge Butler's    term ended on January 2, 2012.

OPINION BY Judge LEAVITT.

The Community Service Leadership Development Charter School (Charter School) petitions for review of an adjudication of the State Charter School Appeal Board (Board) denying its charter school application. Charter School argues that the Board did not "specifically articulate" its reasons for denying the application, as is required by statute. Specifically, Charter School argues that the Board's denial for the reason that Charter School failed to integrate gender-based instruction, community service and leadership development into the curriculum was not sufficiently specific. Agreeing with Charter School, we vacate and remand.

## Background

On November 17, 2008, Charter School submitted an application to the Pittsburgh School District to establish a school for grades kindergarten through eight where classrooms would be segregated by gender. The District denied the application. On November 16, 2009, Charter School submitted a revised application, consisting of the original application and supplemental materials that addressed the District's concerns with the first application. On December 7, 2009, the District conducted a public hearing on the application at which members of the community testified in favor of the application.

2. The Supplemental Reproduced Record was provided by the District and the Reproduced Record by the Charter School pursuant to an agreement by the parties.

3. The District explained that it appoints a review team to review and assess all of the information submitted by a charter school applicant and make findings and recommendations to the District. S.R.R. 275b. Although not clear, the individual members of the review team appear to be persons employed by the District in a variety of teaching and administrative positions.

On December 9, 2009, the District's "review team" presented its evaluation of Charter School's application to the District. Supplemental Reproduced Record [2] at 273b–315b (S.R.R.——).[3] The review team stated that the second application did not have "[t]he community service and leadership development theme ... integrated into the curriculum." S.R.R. 280b. Further, Charter School did not fully explain its gender-based instruction or how the effectiveness of such instruction would be evaluated. The review team held that the application did not address "grading or retention procedures" and it lacked a plan for after-school programs. *Id.*[4] The review team found inadequacies in the staffing for special education, and it questioned the fees to be charged by the management company, Imagine Schools, Inc. (Imagine), which intended to charge a 12% administration fee on gross revenue; in five years, the fee would exceed $3.7 million. Imagine would be permitted to place its own employees and representatives on Charter School's board of directors, which the review team believed to be unethical and to violate the Charter School Law, 24 P.S. §§ 17–1701–A—17–1751–A.[5] For these reasons, the review team recommended that Charter School's second application be disapproved.

On December 15, 2009, the District denied Charter School's second applica-

4. It is not known if the review team was referring to grading of academic performance; assignment of children to the appropriate grade; retention of teachers; or requiring students to repeat a grade. Use of such jargon is not illuminating and does not advance the District's case in support of its decision.

5. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 17–1701–A–17–1751–A, added by the Act of June 19, 1997, P.L. 225.

tion. The District found the application to be deficient because it failed to show that Charter School was able to provide comprehensive learning experiences; did not integrate gender-based instruction, community service and leadership development into the curriculum; lacked sustainable community support; lacked a professional development plan; failed to adequately address special education needs; and suffered both fiscal and operational shortfalls. S.R.R. 316b–319b. Charter School appealed to the Board, which held a hearing. Each side was given fifteen minutes to present its case. Both parties attempted to present additional documentary evidence, but their requests were denied by the Board.

Charter School first presented Sarah Martin, chairperson of its board. Martin briefly testified that she had researched gender-based, community service and leadership schools and determined that such schools have better standardized test results and produce students more likely to be leaders in their community. She presented her study to an interested group of parents in the Pittsburgh area and, later, to Imagine.

Charter School then offered Professor Richard Gutkind. He explained that Charter School planned a challenging and rigorous curriculum, with a focus on leadership and character development built on an ethical curriculum. He envisioned the students forming their own government and court system. He explained that character education and leadership activities would be developed by the physical education program, which would include activities such as rock climbing and camping. The gender-based classrooms would use proven pedagogical techniques. For example, boys would be offered a greater array of reading material, and lessons would be presented visually. Girls would

be encouraged to work in groups, rather than competitively; a variety of teaching approaches would be used to teach girls math.

The District did not present any witnesses. Instead, its counsel argued that the application presented by the Charter School was incomplete in every area and included only cursory attention to community service, leadership and gender-based themes. The District argued that the application was devoid of details on gender-based instruction practices, questioning whether the planned instruction was based on stereotypes or research. The District challenged Imagine's business practices. Finally, the District asserted that the proposed location of the Charter School was neither suitable nor available.

The Board affirmed the District's denial of Charter School's application.

### Board Adjudication

The Board's adjudication is ten pages long. At least half of the adjudication consists of a recital of the statutory requirements for an applicant seeking a charter and a procedural history of Charter School's application. It devotes two pages of discussion to explain why it disallowed the admission of additional evidence, and one and one-half pages of discussion of its reason for affirming the District's decision. Its critical findings are brief.

The critical findings of fact are as follows:

17. The curriculum is deficient because it does not integrate community service and leadership development into the curriculum.

18. The curriculum is deficient because it does not articulate how gender-based instruction is integrated into the curriculum.

19. [Charter School] failed to demonstrate its capability, in terms of support and planning, to provide a comprehensive learning experience to students pursuant to the proposed charter because the curriculum did not integrate community service and leadership development into the curriculum.

20. [Charter School] failed to demonstrate its capability, in terms of support and planning, to provide a comprehensive learning experience to students pursuant to the proposed charter because the curriculum did not articulate how gender-based instruction is integrated into the curriculum.

Adjudication at 2–3. Based on these findings, the Board reached the following key conclusions of law:

8. The Charter School failed to show it is capable of providing a comprehensive learning experience to students pursuant to the charter, as mandated by Section 1717–A(e)(2)(ii) of the Charter Law, 24 P.S. § 17–1717–A(e)(2)(ii).

9. The Charter School failed to show how it will serve as a model for other public schools as mandated by Section 17–1717–A(e)(2)(iv) of the Charter Law, 24 P.S. § 17–1717–A(e)(2)(iv).

10. The School District properly denied the Charter School's Application.

Adjudication at 6.

A charter school must be evaluated in accordance with Section 17–1717–A(e)(2)(i-iv) of the Charter School Law, which states:

(2) A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria including, but not limited to, the following:

(i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).

(ii) The capability of the charter school applicant, in terms of support and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter.

(iii) The extent to which the application considers the information requested in section 1719–A and conforms to the legislative intent outlined in section 1702–A.

(iv) The extent to which the charter school may serve as a model for other public schools.

24 P.S. § 17–1717–A(e)(2)(i-iv). This evaluation is based upon a copious and detailed application.[6] 24 P.S. § 17–1719–A(1)–(17).

6. A charter school application must provide the following information:
(1) The identification of the charter applicant.
(2) The name of the proposed charter school.
(3) The grade or age levels served by the school.
(4) The proposed governance structure of the charter school, including a description and method for the appointment or election of members of the board of trustees.

(5) The mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals.
(6) The admission policy and criteria for evaluating the admission of students which shall comply with the requirements of section 1723–A.
(7) Procedures which will be used regarding the suspension or expulsion of pupils.

As noted, the Board held that Charter School failed to satisfy Section 17–1717–A(e)(2)(ii) and (iv).

In its discussion, the Board explained that where an applicant's curriculum plan is found deficient, then it follows the charter school will not serve as a model for other public schools. Adjudication at 9. In other words, Charter School's failure to show how it would serve as a model was simply another way of saying that its curriculum was inadequate. Noting that the lack of a detailed curriculum is grounds, in itself, to deny a charter, the Board analyzed the deficiencies in Charter School's curriculum as follows:

> The curriculum documents do not clearly articulate how gender-based instruction will be applied. As the purpose of [Charter School] is ostensibly to provide instruction tailored to the gender of the student, it was incumbent on [Charter School] to articulate how that would be reflected in the curriculum. Although [Charter School] indicates its intent is to focus on gender-based instruction, it has not presented anything in its application except vague goals and guidelines for

how it will integrate that concept throughout the core subject curriculum.

\* \* \*

> Further, the application indicates that community service and leadership development will be an important aspect of [Charter School]. *The application does not, however, indicate how community service and leadership development will be integrated into the curriculum.* As with the gender-based instruction, it was incumbent upon [Charter School] to fully describe the integration of community service and leadership development into the curriculum.

Adjudication at 9 (emphasis added).

In short, the Board held that Charter School's proposed curriculum was deficient, not because it did not meet academic standards but because Charter School did not "indicate how community service and leadership development will be integrated into the curriculum." *Id.*

█ Because the Board found the Charter School's proposed curriculum to be inadequate, it did not address the additional grounds for denial cited by the District.

---

> Said procedures shall comply with section 1318.
>
> (8) Information on the manner in which community groups will be involved in the charter school planning process.
>
> (9) The financial plan for the charter school and the provisions which will be made for auditing the school under section 437.
>
> (10) Procedures which shall be established to review complaints of parents regarding the operation of the charter school.
>
> (11) A description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements.
>
> (12) Information on the proposed school calendar for the charter school, including the length of the school day and school year consistent with the provisions of section 1502.

> (13) The proposed faculty and a professional development plan for the faculty of a charter school.
>
> (14) Whether any agreements have been entered into or plans developed with the local school district regarding participation of the charter school students in extracurricular activities....
>
> (15) A report of criminal history record, pursuant to section 111, for all individuals who shall have direct contact with students.
>
> (16) An official clearance statement regarding child injury or abuse from the Department of Public Welfare....
>
> (17) How the charter school will provide adequate liability and other appropriate insurance for the charter school, its employes and the board of trustees of the charter school.
>
> 24 P.S. § 17–1719–A(1)–(17).

Charter School then petitioned for this Court's review.[7]

**Appeal**

Charter School argues that the Board erred. First, it contends that the Board did not specifically articulate its reasons for agreeing with the District. Second, the Board erred in holding that Charter School did not integrate gender-based instruction, community service and leadership into the curriculum. Third, it argues that failure to integrate gender-based instruction, community service and leadership into a curriculum is not, in itself, grounds for denying an applicant a charter.

■ In its first issue, Charter School contends that the Board's opinion simply restates the District's conclusions and does not "specifically articulate" its reasons for agreeing with the District's findings. Charter School contends that an adjudication must be specific enough to enable an applicant to craft an application that can be approved. Otherwise, the charter school will have to prepare and resubmit applications, using guess work as a guide. The District rejoins that the Charter School did not "specifically articulate" its curriculum and, thus, the Board cannot be faulted.

The Charter School Law created the Board to provide a neutral review of a school district's decision. It hears appeals of both charter grants and charter denials. In reviewing a school district's decision, the Board is directed by Section 17–1717–A(i)(6) of the Law to

give due consideration to the findings of the local board of directors and *specifically articulate* its reasons for agreeing or disagreeing with those findings in its written decision.

24 P.S. § 17–1717–A(i)(6) (emphasis added). In *Carbondale Area School District v. Fell Charter School*, 829 A.2d 400, 403 (Pa.Cmwlth.2003), this Court explained that the Board was to "specifically articulate its reasons for agreeing or disagreeing" with the findings of the district because the Board was hearing the matter *de novo*. Because a school district is not an impartial adjudicator, the Board, which has no vested interest in a charter school application, provides that measure of impartiality. *Id.* at 403–404. The question is what is meant by "specifically articulate."

In *Nationwide Mutual Insurance Company v. Commonwealth*, 15 Pa.Cmwlth. 24, 324 A.2d 878 (1974), the Insurance Commissioner disapproved the insurance company's private passenger automobile insurance rate filing, and Nationwide appealed. The applicable statute obligated the Commissioner to review a rate filing and where it did not meet the requirements of the Act to "issue an order specifying in what respects he finds that it so fails. . . ." Section 5 of the Casualty and Surety Rate Regulatory Act, 40 P.S. § 1185.[8] Nationwide challenged the Commissioner's denial as insufficiently specific, and this Court agreed. We held that the Insurance Commissioner had "to do more than merely find fault with the rate filing so as to

---

7. Our scope of review of an order of the Board is limited to a determination of whether constitutional rights were violated, errors of law committed or whether the decision is not supported by substantial evidence. *Carbondale Area School District v. Fell Charter School*, 829 A.2d 400, 403 n. 1 (Pa.Cmwlth. 2003).

8. Act of June 11, 1947, P.L. 538, *as amended*, 40 P.S. § 1185. Section 31 of the Act of Feb. 7, 1990, P.L. 11, No. 6, repealed this section insofar as it is inconsistent with 75 Pa.C.S. Ch. 20 (relating to motor vehicle insurance rate review procedures).

permit its disapproval." *Nationwide*, 324 A.2d at 882. Rather, to meet his statutory obligation, "[t]he Commissioner [was] under an obligation to specify any deficiencies in the rate filing so as to give the company some guidelines for future or amended filings." *Id.*

In *Valley Run, Inc. v. Board of Commissioners of Swatara Township*, 21 Pa. Cmwlth. 649, 347 A.2d 517 (1975), a developer of an apartment complex challenged the denial of its zoning application by a township board. The case was governed by former Section 508(2) of the Municipalities Planning Code, 53 P.S. § 10508(2),[9] which required that the township board " 'specify the defects found in the application and describe the requirements which have not been met.' " *Valley Run*, 347 A.2d at 520. The township board raised a potential issue as to whether the sight distances to an access road complied with the standards of the Pennsylvania Department of Transportation. We held that the township board did not "specify the defects." We concluded that the township board had to identify, with particularity, the requirements not met by the developer, and it did not do so.

Here, the District provided a report listing numerous deficiencies with Charter School's application. The Board did not analyze all of the District's findings. Instead, it focused solely on curriculum, finding that the curriculum was deficient because Charter School did not "integrate community service and leadership development into the curriculum" and did not

articulate how gender-based instruction would be integrated into the curriculum.[10] Adjudication, Findings of Fact ¶¶ 18, 19, 20.

The Board chastises Charter School for not providing a "detailed curriculum" and for presenting "vague goals and guidelines." Adjudication at 9–10. However, the Board offers no examples of what more information must be provided by Charter School to cure the deficiency. As in *Nationwide*, the Board must give guidance so that Charter School will know how to submit an application that will satisfactorily explain the curriculum integration found wanting by the Board. This is particularly appropriate where the Board uses jargon, such as "integrating leadership into a curriculum." This use of jargon makes the need for guidance particularly acute. At a minimum, the Board should provide examples of what kind of report or study needs to be supplied to show that it will "integrate" gender-based instruction and leadership into a curriculum, which is acknowledged to be academically sound.

### Conclusion

For the above-stated reasons, we vacate and remand to the Board. It is directed to "specifically articulate" the deficiencies in Charter School's application so that the applicant may address those deficiencies in an amended or new application.[11]

### ORDER

AND NOW, this 5th day of January, 2012, the October 5, 2010 order of the

---

9. Former Act of July 31, 1968, P.L. 805, *as reenacted and amended* by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10508(2).

10. The District argues that a charter school must use the Department of Education's "Standard Aligned System" when developing a new curriculum. District Brief at 6. The District claims that because the Charter School failed to use this system, it was proper

for the Board to deny the application. The Board did not mention this system. Accordingly, this Court cannot consider the argument.

11. Because we now vacate and remand we will not address the remaining issues raised by the Charter School.

State Charter School Appeal Board is hereby VACATED and REMANDED in accordance with the attached opinion.

Jurisdiction relinquished.