# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Preserve at Blue Ridge, LLC | : | |
| | : | |
| v. | : | No. 100 C.D. 2020 |
| | : | Argued: November 12, 2020 |
| Dorrance Township by, through and | : | |
| including Dorrance Township Board | : | |
| of Supervisors, | : | |
| Appellants | : | |

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE J. ANDREW CROMPTON (P.), Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                              FILED:  December 14, 2020

Dorrance Township, including the Dorrance Township Board of Supervisors (Board), appeals a December 12, 2019 Order of the Court of Common Pleas of Luzerne County (Trial Court) reversing the Board's denial of The Preserve at Blue Ridge, LLC's (Developer) application for approval of a planned residential development (PRD).  The Board argues that the Trial Court committed an error of law or abused its discretion when it reversed the Board's conclusions that Developer's Tentative PRD Application violated Sections 1602, 1603, 1604(C), and 1606(C) of the Zoning Ordinance.[1]  The Board also asserts that the order of the Trial Court is immediately appealable to this Court.  For the foregoing reasons, we affirm the Order of the Trial Court.

---

[1] Dorrance Twp., Pa., Zoning Ordinance §§1602, 1603, 1604(C), 1606(C) (Jan. 8, 2007).

# I.  Background

Developer owns 546.6 acres of property (the Property) surrounding and including the Blue Ridge Trail Golf Club, a 78-acre, 27-hole golf course in Dorrance Township, Luzerne County, Pennsylvania.  Reproduced Record (R.R.) at 36.[2]  The Property is located in a C-1 (Conservation) zoning district.[3]  *Id.* at 37; Zoning Ordinance §§401 & 501.  On February 2, 2016, Developer filed a conditional use application with the Board as a condition precedent to developing the remaining acreage on the Property into a PRD.[4]  R.R. at 150, 776-77.

---

[2] Pennsylvania Rule of Appellate Procedure 2173 states, in pertinent part, as follows:

> [e]xcept as provided in Rule 2174 (tables of contents and citations), the pages of briefs, the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc., and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, etc.

Pa.R.A.P. 2173.  We note that the reproduced record in this case does not follow the rule as stated above.

[3] Under Section 501.4 of the Zoning Ordinance, a PRD is a conditional use.  Zoning Ordinance §501.4.  Article 7 of the Zoning Ordinance defines the procedure for conditional use applications.  In relevant part, Section 702 of the Zoning Ordinance states:

> The authority for approving or denying applications for uses permitted as a conditional use shall be vested in the [Board]. . . . Decisions by the [Board] shall be made in accordance with standards and criteria set forth in [Article 7 of the Zoning Ordinance], any studies and reports required within the context of an Impact Analysis, . . . the respective zoning district in which the use is located, all other applicable regulations of the [Zoning Ordinance], other ordinances of the Township and all applicable State and/or Federal regulations.

Zoning Ordinance §702.

[4] TFP Limited, the previous owner of the Property, filed an application for conditional use, prior to transfer of the Property to Developer. On March 6, 2007, TFP Limited submitted an application for tentative approval of a PRD on the Property.  Reproduced Record (R.R.) at 150.  In **(Footnote continued on next page…)**

2

In its application, Developer sought approval for 193 residential units in a five-phase plan. *Id.* at 776-77. From February 2016 to August 2017, the Board held eight hearings related to Developer's application. *See id*. at 804-1975. In support of its application, Developer offered expert testimony and reports from five professionals, including professional engineers in civil, environmental, and traffic engineering, a professional geologist and soil scientist, and a certified planner. R.R. at 842-44, 1027-30, 1134-35, 1305-09, 1892-1939.

The Board's engineer, Chad Lello, participated in a "back and forth" process with Developer from February 2016 to March 2017, modifying Developer's conditional use application, including plans and maps, to meet the requirements of the Zoning Ordinance. *Id.* at 804-1975; Developer's Br. at 8. On August 14, 2017, the Board approved Phases 1 through 4 of Developer's conditional use application, but denied Phase 5. R.R. at 196-98. Without Phase 5, the PRD would be reduced to 134 residential units. *Id*. at 203-04. The Board also imposed a requirement that Developer comply with Article 16 (governing PRDs) of the Zoning Ordinance. *Id.* at 196.

On August 7, 2018, Developer submitted its Tentative PRD Application to the Board. *Id.* The Board conducted two additional public hearings on the Application. *Id.* at 299, 445. The PRD plan, as submitted by Developer, consists of 143 acres of wetlands, and the Application proposes to have streets

its application, TFP Limited proposed a total of 335 residential units on the Property and requested waivers for certain zoning provisions. *Id.* at 150-51. The application was denied by the Board, and TFP Limited appealed to the Trial Court. *Id.* at 165. The Trial Court reversed the decision of the Board, and the Board appealed to this Court. *Id.* This Court remanded the 2007 application matter to the Trial Court, determining that the Subdivision and Land Development Ordinance (SALDO) applied at the tentative PRD stage. *See TFP Limited v. Dorrance Twp. Bd. of Supervisors* (Pa. Cmwlth., No. 1484 C.D. 2009, filed Sept. 9, 2010), slip op. at 8, 2010 Pa. Cmwlth. Unpub. LEXIS 603, at *10. After remand, the Trial Court affirmed the Board's denial.

3

constructed within 100 feet of the wetlands. *Id.* at 47. On December 28, 2018, the Board denied the Tentative PRD Application, concluding that the plan improperly mixed two "principal" uses, failed to meet the density, setback, and water requirements of the Zoning Ordinance, did not contain final, detailed design site plans, did not secure an easement from the Pennsylvania Department of Transportation (PennDOT), and did not obtain a certificate of public convenience from the Pennsylvania Public Utility Commission. *Id.* at 33-46.

Developer appealed the Board's decision to the Trial Court. On December 12, 2019, the Trial Court reversed the decision of the Board, and ordered that the matter be remanded to the Board for approval of the Tentative PRD Application in a manner consistent with the Trial Court's order. The Trial Court found that the Board abused its discretion and misapplied the law in denying Developer's application. The Board now appeals to this Court.

## II. Discussion

### A. Appealability of the Trial Court's December 12, 2019 Order

On February 24, 2020, this Court issued an order directing the Board and Developer to address the question of whether the December 12, 2019 Order is appealable. In its Order, the Trial Court remanded the proceedings to the Board for it to approve Developer's Tentative PRD Application. The Board asserts that, under Pa.R.A.P. 311(f), the Order is immediately appealable. Rule 311(f) of the Pennsylvania Rules of Appellate Procedure reads:

> **Administrative remand.** An appeal may be taken as of right from: (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) an order of a

4

common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.

Pa.R.A.P. 311(f).

The Board argues that the Trial Court's December 12, 2019 Order directs the Board to approve the Tentative PRD Application without the exercise of administrative discretion. Board's Br. at 13. The Order, in relevant part, reads:

2. [Developer's] tentative planned residential development is approved conditioned upon the approval of the necessary, relevant agencies as defined by applicable state law.
3. This matter is hereby remanded [] to [the Board] for compliance herewith and any further application for final approval must be in compliance with all applicable conditions, applicable law and applicable ordinances.

Board's Br. at App. A. Further, Developer does not dispute that the Order is appealable. Developer's Br. at 19. "Provided that [Developer] complies with the conditions set by such agencies, [the Board] has no discretion to deny tentative approval, thereby rendering the Trial Court's Order immediately appealable under Rule 311(f)." *Id.*

Where a local government agency must engage in fact finding, and administrative discretion is involved, the order is not final, and the order is not appealable. *Arguelles v. Pa. Bd. of Prob. & Parole*, 892 A.2d 912, 914 (Pa. Cmwlth. 2006). However, in the present case, both the Board and Developer contend that the Trial Court directed the Board to approve the Application subject to compliance with requirements imposed by state and federal regulations, without providing the Board with the discretion to deny tentative approval. Developer's Br. at 19; Board's Br. at 13.

5

Further, the Board asserts that because the Trial Court decided the merits of the Tentative PRD Application through its Order, upon completion of the Trial Court's directive to approve the Tentative PRD Application, the Board would not have an opportunity to appeal the decision of the Trial Court. Thus, the issues on appeal presently in this Court would evade appellate review. *See Schultheis v. Bd. of Supervisors of Upper Bern Twp., Berks Cnty.*, 727 A.2d 145, 148 (Pa. Cmwlth. 1999) (this Court held that trial court order was appealable because its decision decided the merits of the land use appeal before it remanded the matter to the governing body); *see also Vanvoorhis v. Shrewsbury Twp.*, 176 A.3d 429, 432-33 (Pa. Cmwlth. 2017) (an order that settles the only point of contention between the parties before remand is immediately appealable).

In issuing its Order, the Trial Court did not allow for administrative discretion on the part of the Board. The Trial Court explicitly directed that the Board approve Developer's Tentative PRD Application, only "conditioned upon the approval of the necessary, relevant agencies as defined by applicable state law." Trial Ct. Order, 12/12/2019. Therefore, the Trial Court did not contemplate a subsequent approval process conditioned on the discretion of the Board, as described in Pa.R.A.P. 311(f)(1) but instead, an automatic issuance of final approval for Developer's Tentative PRD Application. Upon consideration of the briefing provided by both parties, as previously ordered by this Court, we hold that the Trial Court's order is a final, appealable order. Accordingly, we will proceed to consider the merits of this case.

6

**B. Merits of Developer's PRD Application[5]**

The Board argues that Developer's plan violated several sections of the Zoning Ordinance, specifically Sections 1602, 1603, 1604(C), and 1606(C), and therefore, the plan was properly denied. The Board further asserts that the Trial Court committed an error of law and abused its discretion by failing to give the Board's decision appropriate deference.

**1. "Critical Areas": Section 1603**

The Board asserts that it properly found that Developer's plan impermissibly includes streets and building lots within "critical areas" in violation of the Zoning Ordinance. Section 1603(B) of the Zoning Ordinance provides that the net area available for development must be subtracted by "all environmentally constrained land" including any area "which contains critical areas (as defined in Article 2)." Zoning Ordinance §1603(B); R.R. at 261. "Critical areas" are defined as:

> [a]n area with one or more of the following characteristics: stream corridors, streams, flood plain areas, wetlands, slopes which equal or exceed [fifteen] percent, soils classified as highly acidic or highly

---

[5] Developer notes in its brief that after it filed its Tentative PRD Application with the Board, the Board "repealed in its entirety" Article 16, entitled "Planned Residential Developments," of the Zoning Ordinance. R.R. at 780-81. This decision eliminated the possibility for future PRD applications, effectively rendering Developer's Application, the subject of this appeal, its last chance to effectively develop its property. *Id.* This Court has previously held, under similar circumstances, that "[o]utright disapproval would be grossly unfair . . . in that it would mean permanent rejection because of the changes in the zoning ordinance." *Valley Run Inc. v. Swatara Twp. Bd. of Comm'rs*, 347 A.2d 517, 521 (Pa. Cmwlth. 1975).

Interestingly, the most current version of the Zoning Ordinance is not presently reflected on the Dorrance Township website where the Zoning Ordinance is officially published. The 2007 version of the Zoning Ordinance, which still includes Article 16, is the version that Dorrance Township makes publicly available. *Zoning Ordinance*, Dorrance Twp., http://psatstwp.org/luzerne/dorrance/zoning-ordinance/ (last visited Dec. 11, 2020).

7

erodible, soils classified as having a high water table, land and associated soils which display poor percolation, mature stands of native vegetation and aquifer recharge and discharge areas.

Zoning Ordinance §203; R.R. at 238.

Timothy Connelly, a civil engineer for Developer, testified at a Board hearing to the issue of "critical areas:"

Q: [T]here are road areas where roadways have to cross wetlands. Is that ---?
A: Right.
Q: That's correct?
A: Correct.

Board Hr'g Tr., 10/01/2018; R.R. at 347. The Board cited this testimony in finding that "[s]treets crossing wetlands and residential building[s] located within critical areas are damaging to critical areas, not within the public interest, and in violation of the requirements of [Section] 1603 of the Zoning Ordinance." R.R. at 41. In total, Developer's Property contains 143 acres of wetlands. Bd. Op., 12/10/2018, Findings of Fact (F.F.) No. 22; R.R. at 37.

Developer argues that the Trial Court correctly decided that the Board committed an error of law and abused its discretion in determining that Developer did not meet the requirements of Section 1603 of the Zoning Ordinance. Acknowledging a departure from its prior reading of Section 1603,[6] the Trial Court stated that "Section 1603(B) only describes the 'methodology' used to calculate area

---

[6] Developer argues that the Board incorrectly relies on a prior Trial Court decision, specifically an opinion issued in 2011 by the Trial Court in response to the prior owner's PRD application, in support of its interpretation of Section 1603 of the Zoning Ordinance. Further, Developer notes that this argument is precluded on the basis of *res judicata*. At present, we review the December 12, 2019 Order of the Trial Court. While this Court appreciates that the Property has been the subject of prior litigation involving the Board, we must exclusively consider whether the Trial Court committed an error of law or abused its discretion in issuing its December 12, 2019 Order, remanding the case to the Board to grant Developer's Tentative PRD Application without exercise of the Board's discretion.

8

requirements. Nothing in Section 1603(B) states that [Developer] is prohibited from building on any of the listed or critical areas." Trial Ct. Op., 02/20/2020, at 8; Board's Br. at App. B.

In its December 12, 2019 Order, the Trial Court further held that, under Section 1603(B) of the Zoning Ordinance, Developer must subtract the gross area from the total acreage of the listed environmentally constrained land to calculate the total net area available for development. *Id.* Adopting the view of the Trial Court, Developer argues that it properly conducted this deduction to arrive at 134.48 acres of developable space. R.R. at 315-16, 330, 340.

A municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. *Kohr v. Lower Windsor Twp. Bd. of Supervisors*, 910 A.2d 152, 160, n.13 (Pa. Cmwlth. 2006) (quoting *Raum v. Bd. of Supervisors of Treddyffrin Twp.*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977)). Where deficiencies in subdivision or land development plans are relatively minor, the municipality should permit the applicant to make a timely correction of its plans, rather than reject the application outright. *See Valley Run, Inc. v. Swatara Twp. Bd. of Comm'rs*, 347 A.2d 517, 520-21 (Pa. Cmwlth. 1975) (approval was improperly denied on the basis of undisclosed engineering specifications). Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC),[7] in relevant part states:

> [i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. §10603.1.

_____

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

While we defer to the Board's interpretation of its Zoning Ordinance, with regard to credibility determinations, drawing of inferences, and the weighing of evidence, where a board disregards "overwhelming evidence" "capriciously and without reasonable explanation," the decision, even if based on findings "minimally supported by record evidence," is subject to reversal on appeal. *In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 732 (Pa. 2003); *Poster Advert. Co., Inc. v. Zoning Bd. of Adjustment*, 182 A.2d 521, 523 (Pa. 1962). Although the Board provides testimony from Mr. Connelly, Developer's expert, that the Tentative PRD Application includes roadways that will cross wetlands, Section 1603(B) of the Zoning Ordinance does not preclude development of this kind. Wetlands, and "critical areas" more generally, must be subtracted from the overall area available for development, and the Board does not provide evidence to support its alternative interpretation. Therefore, the Trial Court did not err in issuing its December 12, 2019 Order on the basis of Developer's compliance with the requirements involving "critical areas."

## 2.  Wetland Setbacks: Section 1604(C)[8]

The Board asserts that the Trial Court committed an error of law and abused its discretion in holding that Developer met the setback requirements of Section 1604(C) of the Zoning Ordinance.  The Board further contends that Developer admits that it plans to locate roads and streets within 100 feet of wetlands in violation of Section 1604(C).  However, Developer counters that per the definition of "open space" within Section 203[9] of the Zoning Ordinance, surfaces designed or intended for vehicular travel do not violate Section 1604(C) of the Zoning Ordinance.

In its brief submitted to this Court, the Board argues that a plain reading of the Zoning Ordinance indicates that roads and streets are "other surfaces designed

---

[8] Section 1604(C) of the Zoning Ordinance reads:

Setback Requirements: The minimum front, side and rear setbacks for a [PRD] shall each be not less than [50] feet to the property lines of adjoining properties.  A planting strip of not less than [20] feet in width shall be along all property lines at the periphery of the development where necessary to preserve the privacy of neighboring residents.
Land adjacent to a lake, pond, stream, wetland, or watercourse shall remain as permanent open space for a distance of not less than [100] feet from the water's edge, unless superseded by more restrictive standards.

Zoning Ordinance §1604(C).

[9] Section 203 of the Zoning Ordinance reads:

An area that is intended to provide light and air, and is designed for environmental, scenic, or recreational purposes. Open space may include, but is not limited to, lawns, decorative planting, walkways, active and passive recreation areas, playgrounds, fountains, swimming pools, wooded areas, and watercourses. Open space shall not be deemed to include driveways, parking lots, or other surfaces designed or intended for vehicular travel.

Zoning Ordinance §203.

or intended for vehicular travel" and therefore, do not satisfy the "open space" requirement within 100 feet of wetlands as outlined in Section 1604(C) of the Zoning Ordinance. However, Developer directs this Court to the Board's own discussion of this provision in its decision denying Developer's Tentative PRD Application, which is the subject of the present appeal. *See* Bd. Op., 12/18/2018, Conclusions of Law (C.L.) No. 24. "[T]he Board concludes that [exceptions to] open space d[o] not intend to include streets or such words would have been specifically used in the definition of open space." C.L. No. 24; R.R. at 41.

The "[Board] is entitled to considerable deference in interpreting its zoning ordinance." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). While the Court adheres to this principle, in this case, the Board presents multiple interpretations of the same ordinance. On appeal to this Court is the December 12, 2019 Order of the Trial Court that was based on a review of the Board's December 18, 2018 decision in which the Board concluded that the definition, and relevantly the listed exceptions, of "open space" does not include streets. Now, on appeal, the Board provides an alternative interpretation to this Court, excluding roads and streets from the definition of open space. As our review is limited to the Trial Court's December 12, 2019 Order, we must only consider the Board decision, and corresponding interpretation, that was before the Trial Court at that time.

"Where doubt exists as to the intended meaning of a zoning ordinance, that language shall be interpreted in favor of the property owner." *Latimore Twp. v. Latimore Twp. Zoning Hearing Bd.* 58 A.3d 883, 888 (Pa. Cmwlth. 2013) (quoting *Anter Assocs. v. Zoning Hearing Bd. of Concord Twp.* 17 A.3d 467, 469 (Pa. Cmwlth. 2011)). Therefore, in this case, where the Board presents two

interpretations of its ordinance, and the one most favorable to Developer was presented within a Board decision considered in the December 12, 2019 Trial Court Order that is the subject of this appeal, we determine that the exceptions to the definition of "open space" do not include roads or streets. The Trial Court did not err in reversing the decision of the Board as Developer did not violate the requirements of Section 1604(C) by submitting a plan that included roads and streets within 100 feet of wetlands.

### 3. Mixed Use: Section 1602[10]

The Board also asserts that the Trial Court abused its discretion and committed an error of law in concluding that Section 1602 of the Zoning Ordinance does not prohibit mixed uses in a PRD. The Board previously found that because Developer's Tentative PRD Application included the existing golf course, which would be a second principal use and a non-permitted commercial use, the PRD violated the Zoning Ordinance, and therefore, was appropriately denied. Developer contends that the Board erred in its finding because not only does Section 1602 not contain a prohibition on "mixing uses," but the golf course was removed from calculations and not included within the PRD plan. R.R. at 260, 854.

---

[10] Section 1602 of the Zoning Ordinance reads:

> The principal permitted uses shall include:
> A. Single-family Detached Dwellings
> B. Two-family Dwellings
> C. Townhouses
> [D.] Accessory Uses: Customary accessory uses and buildings to the above shall be permitted in accordance with the applicable provisions of the Ordinance.

Zoning Ordinance §1602.

Developer agrees that, under Section 1602 of the Zoning Ordinance, a golf course does not qualify as a "principal" permitted use. Developer's Br. at 38. However, Developer argues that its PRD plan involves the construction of 134 residential units surrounding an *existing* golf course. R.R. at 203-04. Additionally, the operation of the golf course will not be changed by the PRD, as it has been operating since the mid-1990s independently from any proposed PRD plan. Developer further rejects the Board's argument that the golf course is part of the PRD plan, as the approximately 100 acres of land making up the golf course were deducted from all calculations in determining net developable land and were not included in the open space calculations. R.R. at 47, 203-04, 1922-23, 1933-34.

The Trial Court found that as the golf course is not part of the residential development proposed in the PRD plan, Developer was in compliance with Section 1602 of the Zoning Ordinance. Further, the Trial Court did not find that the Zoning Ordinance contained "exclusionary language" that would prohibit the existence of the golf course with the subject of the PRD plan surrounding its perimeter. The Trial Court also determined that Section 1602 does not prohibit residential neighborhoods near commercial facilities or the "mixing of uses" that the Board suggests. Trial Ct. Op., 02/20/2020, at 10; Board's Br. at App. B.

The Board cites to the Pennsylvania Supreme Court's decision in *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886, 902 (Pa. 2019), in support of its assertion that the golf course is not expressly permitted in Section 1602 of the Zoning Ordinance, and therefore, invalidates Developer's PRD plan. In *Slice of Life*, the Supreme Court held that where "the [o]rdinance clearly and unambiguously excluded, in pertinent part, purely transient uses of property in" the relevant zoning district, the use of a property for short-term rentals was not

14

permitted. *Slice of Life*, 207 A.3d at 899. Developer distinguishes the present case before this Court, arguing that Section 1602 does not clearly exclude a golf course from a PRD, and also, the golf course is not a component of the PRD plan, which contains 134 residential properties. Developer argues that the 134 residential properties, the subject of the PRD plan, must comply with the requirements of Section 1602 of the Zoning Ordinance.

Section 107 of the MPC defines a PRD as:

> an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, **or combination of residential and nonresidential uses**, the development plan for which does not correspond in lot size, bulk, type of dwelling, or use, density, or intensity, lot coverage and required open space to the regulations established in any one district created, from time to time, under the provisions of a municipal zoning ordinance.

53 P.S. §10107 (emphasis added). While Developer appreciates that Section 1602 of the Zoning Ordinance does not allow for construction of a PRD with a commercial property as a "principal use," Developer contends that the Board errs in stating that a PRD may never include a "mixing of uses." As described above, the MPC contemplates the possibility of mixed use PRDs.

The Trial Court stated that:

> [Developer] is not constructing a commercial golf course in an already established PRD. Rather, [Developer] is constructing a PRD near a golf course on the same property. The PRD would not be mixing commercial and residential uses as the golf course was not included in the PRD [p]lan or any of the calculations.

Trial Ct. Op., 02/20/2020, at 11; Board's Br. at App. B. The golf course is a preexisting structure that is not part of the new construction anticipated by the PRD plan. Therefore, the existence of the golf course within the proximity of the

15

proposed 134 residential structures in the PRD plan does not violate Section 1602 of the Zoning Ordinance. The Trial Court did not err in holding as such.

### 4. Water Supply: Section 1606(C)[11]

Finally, the Board argues that the Trial Court abused its discretion and committed an error of law in concluding that Developer's proposed water supply system complies with Section 1606(C) of the Zoning Ordinance. The Board asserts that Section 1606(C) of the Zoning Ordinance requires that the water supply for a PRD be located "off-site." The Board previously concluded that Developer's proposed well parcel is "on-site" and therefore does not conform to Section 1606(C) of the Zoning Ordinance. Bd. Op., 12/18/2018, C.L. No. 42; R.R. at 44.

Article 2 of the Zoning Ordinance defines a centralized water supply system as:

> A public or privately owned system, under the jurisdiction of the Pennsylvania Public Utility Commission, designed to transmit potable water from a common source to users, and in compliance with the governing standards of all applicable State agencies. **Any water supply system not deemed as centralized water supply system shall be deemed to be an on-site water supply system.**

Zoning Ordinance §2-29 (emphasis added). Four experts for Developer, including Mr. Connelly, testified that the proposed water system is a centralized off-site system

---

[11] Section 1606(C) of the Zoning Ordinance, Zoning Ordinance §1606(C), states:

Water Supply: The water supply shall be [an] off-site system supplied by a certified public utility, a bona fide cooperative association of lot owners, or by a municipal corporation, authority or utility. A copy of a Certificate of Public Convenience from the Pennsylvania Public Utility Commission or an application for such a certificate, a cooperative agreement or a commitment or agreement to serve the planned residential development in question shall be required. Whichever form is appropriate, shall be considered as acceptable evidence.

16

in compliance with the Zoning Ordinance. Further, the experts explained that an "off-site [system] is synonymous with [a] central [system]." R.R. at 384, 411. Because the plan does not provide for individual wells for each individual home site for each of the proposed 134 residential structures, the water supply is off-site. *See id.*

The Trial Court noted in its opinion, as did Developer in its brief to this Court, that Developer attempted to address the concerns of the Board beyond the requirements outlined within Section 1606(C) of the Zoning Ordinance. While Developer has maintained that its proposed system is a centralized water supply system, Developer subdivided a 2½-acre lot from the Property for the main well. This voluntary modification eliminates any interpretation that the main well is located within the PRD, and therefore, is "on-site." Developer's Br. at 47; Trial Ct. Op., 02/20/2020, at 12; Board's Br. at App. B.

Therefore, the Trial Court held that the Board's denial of the PRD plan on the basis of noncompliance with Section 1606(C) of the Zoning Ordinance was not supported by substantial evidence and that the Board abused its discretion and committed an error of law through its denial. As the testimonies of Developer's experts are unrefuted by the Board, the water supply system is off-site for purposes of Section 1606(C) of the Zoning Ordinance. The Trial Court did not commit an error of law or abuse its discretion in making this determination.

### III. Conclusion

For the foregoing reasons, we affirm the December 12, 2019 Order of the Trial Court.

_____
J. ANDREW CROMPTON, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Preserve at Blue Ridge, LLC | : | |
| | : | |
| v. | : | No. 100 C.D. 2020 |
| | : | |
| Dorrance Township by, through and | : | |
| including Dorrance Township Board | : | |
| of Supervisors, | : | |
| Appellants | : | |

# **O R D E R**

**AND NOW**, this 14th day of December 2020, we **AFFIRM** the December 12, 2019 Order of the Court of Common Pleas of Luzerne County.

_____
J. ANDREW CROMPTON, Judge